## IONUNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JONATHAN GABRIELLI, individually and
on behalf of all others similarly situated,

        Plaintiff,

v.

INSIDER, INC.,

        Defendant.

Case No. 1:24-CV-01566-ER

## DEFENDANT INSIDER, INC.'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS THE
## FIRST AMENDED CLASS ACTION COMPLAINT

BAKER & HOSTETLER LLP
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201

*Attorneys for Defendant INSIDER, INC.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF ALLEGED FACTS.............................................................................3

    A.    Business Insider and Its Website. ...............................................................3

    B.    Plaintiff's Interactions with the Site. .........................................................3

    C.    Plaintiff's Claim.........................................................................................4

MOTION TO DISMISS STANDARDS ...........................................................................5

II.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)........................................5

III.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)........................................5

ARGUMENT .....................................................................................................................6

I.    PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT. ...................6

    A.    Plaintiff Has Not Alleged and Cannot Allege a Concrete Injury............................6

        1.    New York Law Does Not Recognize the Type of "Harm" Alleged by Plaintiff. .......................................................................8

        2.    Plaintiff Has Not Alleged an Invasion-of-Privacy Harm Under California Law Either. ................................................................8

            a.    Element 1: Legally Protected Privacy Interest................................9

            b.    Element 2: Reasonable Expectation of Privacy ............................10

            c.    Element 3: A Serious Invasion of Privacy ....................................11

II.    PLAINTIFF HAS NOT ALLEGED AND CANNOT ALLEGE A VIABLE CLAIM UNDER CALIFORNIA'S INVASION OF PRIVACY ACT. ...........................13

    A.    Plaintiff Voluntarily Disclosed to Business Insider the Exact Information Plaintiff Claims Business Insider Unlawfully Collected. ......................................13

    B.    Plaintiff Does Not Allege That the "Tracker" Is a "Pen Register" under California Law. ..........................................................................................18

        1.    Under CIPA, Pen Registers Do Not Collect IP Addresses. .......................18

        2.    Pen Registers Collect Outbound Dialing Information, Not the Source. ..................................................................................22

III.    THE FAC SHOULD BE DISMISSED WITH PREJUDICE. ............................................23

IV.    CONCLUSION.............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*,
  396 F. Supp. 2d 747 (S.D. Tex. 2005) .....................................................................23

*In re Application of U.S. for an Ord. Authorizing Use of a Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name (xxxxxxxx@xxx.com)*,
  396 F. Supp. 2d 45 (D. Mass. 2005) .......................................................................22

*In re Application of the U.S. for an Ord. Pursuant to 18 U.S.C. sec. 2703(d)*,
  830 F. Supp. 2d 114 (E.D. Va. 2011) .....................................................................18

*Application of U.S. of Am. for an Order Authorizing Use of a Cellular Tel. Digital Analyzer*,
  885 F. Supp. 197 (C.D. Cal. 1995) ....................................................................19, 20

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................5, 18

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) .....................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................5, 18

*Capitol Records Inc. v. Thomas-Rasset*,
  No. CIV 06-1497(MJD/RLE), 2009 WL 1664468 (D. Minn. June 11, 2009) ...........14, 15, 17

*Carpenter v. United States*,
  138 S. Ct. 2206 (2018) .........................................................................................21

*Carroll v. Trump*,
  590 F. Supp. 3d 575 (S.D.N.Y. 2022) .....................................................................23

*Casillas v. Transitions Optical, Inc.*,
  Case No. 23STCV30742 (Cal. Super. Ct. L.A. Cnty. April 23, 2024) .....................................16

*Ciccone v. Cavalry PortfolioServs., LLC*,
  No. 21-CV-2428(JS)(JMW), 2021 WL 5591725 (E.D.N.Y. Nov. 29, 2021) ...........................7

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
  752 F.3d 173 (2d Cir. 2014) ..................................................................................23

*Columbia Pictures Indus. v. Bunnell*,
    No. CV 06-1093FMCJCX, 2007 WL 2080419 (C.D. Cal. May 29, 2007)................13, 16, 23

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*,
    790 F.3d 411 (2d Cir. 2015)............................................................................................5

*Folgelstrom v. Lamps Plus, Inc.*
    195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011)......................................12

*Goe v. Zucker*,
    43 F.4th 19 (2d Cir. 2022) ..........................................................................................18

*Greenley v. Kochava, Inc.*,
    684 F. Supp. 3d 1024 (S.D. Cal. 2023)..........................................................................2

*Greenley v. Kochava*,
    No. 22-cv-01327-BAS-AHG, 2023 WL 4833466 (S.D. Cal. July 27, 2023)..................17, 21

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ......................................................16, 21, 22

*Hill v. Nat'l Collegiate Athletic Assn.*,
    7 Cal. 4th 1 (1994) .............................................................................................8, 9, 12

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................................................................12

*Kola v. Forster & Garbus LLP*,
    No. 19-CV-10496, 2021 WL 4135153 (S.D.N.Y. Sept. 10, 2021)...........................8

*Licea v. Hickory Farms LLC*,
    No. 23STCV26148, 2024 WL 1698147 (Cal.Super. Mar. 13, 2024).........................13, 16, 17

*Lorillard v. Pons*,
    434 U.S. 575 (1978).....................................................................................................20

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)..........................................................................................5

*Malibu Media, LLC v. Pontello*,
    No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013,)............................15, 17, 18

*Mikulsky v. Noom, Inc.*,
    682 F. Supp. 3d 855 (S.D. Cal. 2023)........................................................................10

*Mills v. Miteq, Inc.*,
No. CV06-752(SJF)(AKT), 2007 WL 2908218 (E.D.N.Y. Sept. 14, 2007),
*report and recommendation adopted*, No. 06-CV-0752 (SJF), 2007 WL
2932816 (E.D.N.Y. Oct. 3, 2007) .........................................................................8

*Morrison v. Nat'l Austl. Bank Ltd.*,
547 F.3d 167 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010) ......................................5

*Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*,
414 U.S. 453 (1974)..............................................................................................21

*Norman-Bloodsaw v. Lawrence Berkeley Lab'y*,
135 F.3d 1260 (9th Cir. 1998) ..............................................................................9

*People v. Evensen*,
4 Cal. App. 5th 1020 (2016) ................................................................................11

*People v. Larkin*,
194 Cal. App. 3d 650 (1987) ................................................................................22

*People v. Stipo*,
195 Cal. App. 4th 664 (2011) ..............................................................................11

*Smith v. Maryland*,
442 U.S. 735 (1979)........................................................................................11, 22

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016), *as revised* (May 24, 2016).....................................................6

*Sputz v. Alltran Fin.*,
LP, No. 21-CV-4663 (CS), 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021)...........7, 8

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)............................................................................................6, 7

*In re U.S.*,
441 F. Supp. 2d 816 (S.D. Tex. 2006) .................................................................20

*Underhill v. Kornblum*,
No. 16-CV-1598-AJB-WVG, 2017 WL 2869734 (S.D. Cal. Mar. 16, 2017)........14

*United States v. Acevedo-Lemus*,
No. SACR 15-00137-CJC, 2016 WL 4208436 (C.D. Cal. Aug. 8, 2016), *aff'd*,
800 F. App'x 571 (9th Cir. 2020)..........................................................................17

*United States v. Broy*,
209 F. Supp. 3d 1045 (C.D. Ill. 2016), *aff'd sub nom. United States v. Kienast*,
907 F.3d 522 (7th Cir. 2018) ...............................................................................11

*United States v. Christie*,
  624 F.3d 558 (3d Cir. 2010)........................................................................10

*United States v. Felton*,
  367 F. Supp. 3d 569 (W.D. La. 2019)......................................................9, 10

*United States v. Forrester*,
  512 F.3d 500 (9th Cir. 2008) ..................................................................11, 16

*United States v. Jadlowe*,
  628 F.3d 1 (1st Cir. 2010)..........................................................................22

*United States v. Jean*,
  207 F. Supp. 3d 920 (W.D. Ark. 2016), *aff'd*, 891 F.3d 712 (8th Cir. 2018) ....................9, 10

*United States v. Kidd*,
  394 F. Supp. 3d 357 (S.D.N.Y. 2019) .........................................................10

*United States v. Matish*,
  193 F. Supp. 3d 585 (E.D. Va. 2016) ..........................................................10

*United States v. Pacheco*,
  225 F.3d 148 (2d Cir. 2000).......................................................................20

*United States v. Soybel*,
  13 F.4th 584 (7th Cir. 2021) ......................................................................22

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*,
  454 U.S. 464 (1982)...................................................................................6

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ....................................................................11

**Statutes**

18 U.S.C. § 3121(a) .....................................................................................16

18 U.S.C. § 3123(b) .....................................................................................19

18 U.S.C. § 3127 .........................................................................................19

47 U.S.C. § 1002(a)(2)(B) ............................................................................21

Cal. Penal Code § 638.50(b)...........................................................................4

Cal. Penal Code § 638.52(d)..........................................................................19

**Other Authorities**

147 Cong. Rec. S11006–S11007 (Oct. 25, 2001)..............................................................20

Defendant Insider, Inc. ("Business Insider") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

In his First Amended Complaint ("FAC"), Plaintiff Jonathan Gabrielli ("Plaintiff") tries to stretch California's Penal Code beyond the bounds of reason, seeking to impose on a New York company hefty statutory penalties unique to California based on his own voluntary decision to visit a website.  Put simply, he seeks to criminalize one of the most ubiquitous aspects of everyday life—internet browsing.  Fortunately, neither the statute he is suing under, California Penal Code Section 638.51(a); its legislative history; its federal counterpart, the federal Pen Register Act, 18 U.S.C. § 3121, *et seq*; nor case law interpreting those statutes supports his claim.

Plaintiff's entire claim boils down to: (1) through its website, www.businessinsider.com, Business Insider installs a "tracker" on the browser of each individual who visits the website, which in turn captures and sends to Audiencerate—the developer of the tracker—the visitor's IP address, [Dkt. No. 19, ¶¶ 1-2, 22]; (2) "[b]ecause the Audiencerate Tracker captures outgoing information—the IP address—from visitors to" www.businessinsider.com, the tracker "is a 'pen register' for purposes" of California Invasion of Privacy Act ("CIPA") § 638.50(b), [*id.* at ¶ 41]; and (3) because CIPA makes it unlawful to install or use a pen register absent a court order, which Business Insider did not obtain, Business Insider violated CIPA and, in turn, is subject to $5,000 in statutory penalties per violation, [*id.* at ¶¶ 72-74, 78-79]. Plaintiff's claim suffers from myriad flaws, none of which can be rectified through amendment.

**First**, Plaintiff filed suit in this Court, meaning it is his burden to establish that this Court

has jurisdiction over his claim.  He has failed to make that showing.  Plaintiff's FAC is based—entirely—on a pure statutory violation.  But, as the Supreme Court has made clear, an injury in law is not an injury in fact.  Plaintiff must allege something beyond a mere statutory violation to establish Article III standing.  He must allege a concrete injury, which he has not done.  Therefore, before even delving into the merits (or lack thereof) of Plaintiff's claim, his FAC fails.

**Second**, even if Plaintiff did have standing to sue, he still would have no claim to pursue.  The statute under which Plaintiff sues is quite specific.  It penalizes the installation or use of a "pen register" without a court order.  It, therefore, goes without saying that, in order to have a claim, Plaintiff must demonstrate that Business Insider did, in fact, install or use a "pen register."  Plaintiff has failed to do that.

Historically, pen registers were used by ***a third party*** (i.e., law enforcement personnel) to identify the ***telephone numbers*** that were being ***dialed*** by a person of interest in a criminal investigation.  *See Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) ("Traditionally, law enforcement used 'pen registers' in investigations to record all numbers called from a particular telephone[.]").  That is, a pen register was used on a specifically identified telephone number or person and allowed someone who was not a party to the call to identify who that number or person was calling.  Pen registers were not used to identify the *source* of the call (because that information was necessarily already known.  And pen registers, at least under California law, were not used to collect anything but telephone numbers.

The "Tracker" on which Plaintiff bases his claim bears no resemblance to historical pen registers.  The "Tracker" does not capture information otherwise unknown to the entity using it; it captures IP addresses that users, including Plaintiff, already voluntarily provided to Business Insider as a result of their visiting the site.  The "Tracker" does not capture the persons or entities

to which Plaintiff is communicating; it captures the IP address that Plaintiff is using.  And the "Tracker" is not attached to, associated with, or targeted at a telephone line; it is a line of code in Business Insider's website.

At bottom, Plaintiff's attempt to effectively criminalize the internet is not and should not be permitted.  California Penal Code Section 638.51(a) was intended to rein in and provide judicial supervision over law enforcement's surreptitious surveillance of unsuspecting criminal investigation targets.  It was not meant to penalize a website operator for collecting information affirmatively and voluntarily provided to it.  Plaintiff's FAC should be dismissed, in its entirety and with prejudice.

## STATEMENT OF ALLEGED FACTS

### A.    Business Insider and Its Website.

Business Insider "is a 'digital business news site' that focuses on 'cover[ing] the people, companies, and ideas changing our world.'" [ECF No. 19, ¶ 42.]  Business Insider allows users, such as Plaintiff, to access and read published content on its website, https://www.businessinsider.com (the "Site"). [*Id.* at ¶¶ 1, 38, Figure 3.]

### B.    Plaintiff's Interactions with the Site.

Plaintiff is a resident of Oakland, California, [*id.* at ¶ 6], and claims to "have visited the" Site "multiple times—including as long ago as March 2020 and as recently as December 2023— on his desktop browser," [*id.* at ¶ 57].  Although Plaintiff does not explain what he did on the Site or why he visited it, he does allege that when he visited the Site, the Site's "code" caused what Plaintiff calls "the Tracker" to be "installed" on his "browser." [*Id.* at ¶ 58.]  This Tracker, according to Plaintiff, is developed by Audiencerate LTD, which Plaintiff describes as "a software-

as-a-service company," [*id.* at ¶ 32], and is a "third-party script" integrated into the code of the Site, [*id.* at ¶ 43].

Plaintiff further claims that Business Insider utilizes the "Tracker" to "analyze [the Site's] data and marketing campaigns, conduct targeted advertising, and boost Defendant's revenue[.]" [*Id.* at ¶ 51.]  The "Tracker" allows Business Insider to do this by "collect[ing] the IP address of visitors to the [Site]." [*Id.* at ¶¶ 48, 58 ("Defendant and Audiencerate then used the Tracker to collect Plaintiff's IP address.").]  Plaintiff does not allege that the "Tracker" captured any information other than his IP address and, in fact, expressly alleges that the "Tracker" "does not collect the content of Plaintiff's and the Class's electronic communications with the" Site. [*Id.* at ¶ 76.]

### C.    <u>Plaintiff's Claim</u>

Based on the above, Plaintiff asserts one claim against Business Insider—violation of California Penal Code Section 638.51(a).  More specifically, Plaintiff alleges that by utilizing the "Tracker" on the Site, Business Insider unlawfully installed and used a "pen register," which California law defines as "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." [*Id* at ¶ 73, ¶ 74 (citing Cal. Penal Code § 638.50(b).]

Plaintiff asserts this claim not only on behalf of himself, but also on behalf of "all California residents who accessed the [Site] in California and had their IP address collected by the Tracker." [*Id.* at ¶ 63.]  Plaintiff seeks, among other things, "statutory damages of $5,000 for each violation." [*Id* at PRAYER FOR RELIEF, (d).]

## MOTION TO DISMISS STANDARDS

### II.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)

Under Rule 12(b)(1), a district court may properly dismiss an action for lack of subject matter jurisdiction "if the court lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015) (citations omitted). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In determining whether subject matter jurisdiction exists, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted), *aff'd*, 561 U.S. 247 (2010).

### III.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing a motion to dismiss for failure to state a claim, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007). That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id*. at 570.

## ARGUMENT

### I.    PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT.

The law is clear: "Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475–76 (1982). Article III standing requires the plaintiff to have, among other things, "suffered an injury in fact[.]" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016).

To establish injury-in-fact, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339 (internal quotations omitted). Concrete injuries can be "tangible" or "intangible." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Tangible injuries arise from "physical harms and monetary harms." *Id.* Intangible injuries require "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," like "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id.* at 425.

Plaintiff here alleges neither tangible nor intangible harms arising out of Business Insider's alleged violation of California Penal Code Section 638.51(a).  Therefore, Plaintiff has not adequately alleged a concrete injury sufficient to establish Article III standing.  His FAC must be dismissed.

### A.    Plaintiff Has Not Alleged and Cannot Allege a Concrete Injury.

As explained above, there are two types of harm that can constitute "concrete injury" for Article III standing purposes: (1) tangible and (2) intangible. There can be no dispute that Plaintiff here does not allege any "tangible" harms arising out of Business Insider's conduct.  Plaintiff did not allege any "physical harms" or "monetary harms" in his original Complaint, [ECF No. 1], and he has not alleged any in his FAC either, [*see* ECF No. 19].  Therefore, the only way that Plaintiff

6

can establish a concrete injury for purposes of Article III standing is to allege that he suffered an "intangible harm."

Here, Plaintiff claims that, by collecting his IP address, Business Insider invaded his privacy.  [ECF No. 19, ¶¶ 50 ("The collection of Plaintiff's and Class Members' personally identifying, non-anonymized information through Defendant's installation and use of the Tracker constitutes an invasion of privacy."), 62 ("Plaintiff has, therefore, had his privacy invaded by Defendant's violations of CIPA § 638.51(a).")].  Plaintiff, however, has not sued Business Insider for invasion of privacy, whether under California or any other state law.  [*See generally* ECF No. 19.]  Instead, Plaintiff has sued Business Insider under Section 638.51(a) of California's Penal Code, a statute intended to regulate the surveillance by law enforcement personnel of persons under investigation.

But intangible harms do not arise simply because the plaintiff alleges that the defendant violated a statute.  *TransUnion LLC*, 594 U.S. at 427 ("[U]nder Article III, an injury in law is not an injury in fact.").  In fact, the Supreme Court in *TransUnion* "rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 2205.  Indeed, "the *TransUnion* decision 'substantially and materially changed' a district court's analysis of Article III standing in statutory consumer law cases." *Ciccone v. Cavalry PortfolioServs., LLC*, No. 21-CV-2428(JS)(JMW), 2021 WL 5591725, at *3 (E.D.N.Y. Nov. 29, 2021) (citation omitted).  Post-*TransUnion*, to evaluate standing, the court must determine whether the plaintiff asserting a statutory violation has also alleged the necessary elements of an historically recognized harm, and "where a key element of the analogous common-law or historical harm is missing, the plaintiff lacks standing." *Sputz v. Alltran Fin.*, LP, No. 21-CV-4663 (CS), 2021 WL 5772033, at

*3 (S.D.N.Y. Dec. 5, 2021) (quoting *Kola v. Forster & Garbus LLP*, No. 19-CV-10496, 2021 WL 4135153, at *6 (S.D.N.Y. Sept. 10, 2021) (Under *TransUnion*, "it is impermissible for courts to rely on the conclusion that any violation of a given statute automatically establishes standing absent a more searching analysis of the injury.")). Applied here, for Plaintiff to have standing, he must allege every element required to establish his alleged invasion-of-privacy harm.  He has failed to do so.

### 1.    New York Law Does Not Recognize the Type of "Harm" Alleged by Plaintiff.

As an initial matter, "there is no common-law right of action for invasion of privacy" under New York law. *Mills v. Miteq, Inc.*, No. CV06-752(SJF)(AKT), 2007 WL 2908218, at *5 (E.D.N.Y. Sept. 14, 2007), *report and recommendation adopted*, No. 06-CV-0752 (SJF), 2007 WL 2932816 (E.D.N.Y. Oct. 3, 2007). Instead, under New York law, an invasion of privacy claim is exclusively statutory and only arises "when one's name, likeness or voice has been used for advertising purposes or in commerce without permission," *id.*, which Plaintiff does not allege, [*see generally* ECF No. 19.]  Therefore, under New York law, Plaintiff has not alleged the "element[s] of the analogous common-law or historical harm," *Sputz*, 2021 WL 5772033, at *3, meaning he has not alleged any concrete injury and, in turn, has not established Article III standing.

### 2.    Plaintiff Has Not Alleged an Invasion-of-Privacy Harm Under California Law Either.[1]

Unlike New York, California does recognize a common-law invasion-of-privacy claim. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994) (acknowledging, under California law, the common law right of privacy).  Such a claim, however, is not without limitations.  *Id.* at

---

[1] Given that Plaintiff has not alleged standing under any state's law, Business Insider has not performed a conflict-of-law analysis here.  Nevertheless, Business Insider disputes that California law applies to it here.

25 ("The common law right of privacy contains several important limiting principles that have prevented its becoming an all-encompassing and always litigable assertion of individual right."). To establish an invasion of privacy under California law, the plaintiff must demonstrate: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) a serious invasion of privacy interest." *Id.* at 35-37.  Plaintiff here has alleged none of these three elements.

a.    <u>Element 1: Legally Protected Privacy Interest</u>

While "[i]nformational privacy is the core value furthered by the Privacy Initiative," not all information is private. *Hill*, 7 Cal. 4th at 35; *see also Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1271 (9th Cir. 1998) ("Under California law, a legally recognizable privacy interest arises from the sort of information revealed[.]"). [I]nformation is private when well-established social norms recognize the need to maximize individual control over its dissemination and use to prevent unjustified embarrassment or indignity." *Hill*, 7 Cal. 4th at 35. Thus, the question here is whether Business Insider's collection and sharing of the IP address Plaintiff provided to Business Insider when he visited the Site resulted in "unjustified embarrassment or indignity." *Id.* Clearly, it did not.

IP addresses are not now, nor have they ever been, private information, the disclosure of which would result in "unjustified embarrassment or indignity."  As one court put it, an "IP address can be determined with relative ease because it is always attached, like a 'return address,' to every 'envelope' of information exchanged back and forth by computers that are actively communicating with each other over the internet." *United States v. Jean*, 207 F. Supp. 3d 920, 928–29 (W.D. Ark. 2016), *aff'd*, 891 F.3d 712 (8th Cir. 2018) ("*Jean*").  Further, the court in *Jean* found that an IP address does not even "belong to" any specific person, given that an IP address "is not associated with the user's personal property and cannot be transported to a new location simply by moving the user's personal computer to that new location." *Id.* at 932; *see also United States v. Felton*, 367

9

F. Supp. 3d 569, 574 (W.D. La. 2019) ("*Felton*") (noting that "the IP address… [was] not owned, nor possessed by [the individual]"). In fact, "if a user were to take his home laptop computer to a local coffee shop to browse the internet, his IP address would not follow him from his home to the coffee shop. Instead, he would use the coffee shop's IP address when browsing online." *Jean*, 207 F. Supp. 3d at 932.

Information, like the IP address alleged here, that can be "determined with relative ease" because it is voluntarily "exchanged back and forth by computers" and that is not even associated with a specific person or device clearly does not give rise to a "privacy interest." *Felton*, 367 F. Supp. 3d at 575 ("[The defendant's] use of the IP address is not so closely related to his 'home' that the Court can say that there is a privacy interest as to his papers and personal effects."); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (holding that the disclosure of "basic contact information, such as [an] email address *or phone number*,…does not bear a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" (emphasis added)); ECF No. 19, ¶ 26 (alleging that "[m]uch like *a telephone number*, an IP address is a unique numerical code associated with a specific internet-connected device" (emphasis added)).

### b.   *Element 2: Reasonable Expectation of Privacy*

Courts have consistently held that a person, such as Plaintiff, has no reasonable expectation of privacy in an IP address. *See, e.g., United States v. Kidd*, 394 F. Supp. 3d 357, 362 (S.D.N.Y. 2019) ("[M]ost courts have adopted a categorical approach holding that users have no reasonable expectation of privacy in such IP address information."); *United States v. Matish*, 193 F. Supp. 3d 585, 615 (E.D. Va. 2016) ("Generally, one has no reasonable expectation of privacy in an IP address when using the Internet."); *United States v. Christie*, 624 F.3d 558, 574 (3d Cir. 2010)

("[N]o reasonable expectation of privacy exists in an IP address…."); *United States v. Broy*, 209 F. Supp. 3d 1045, 1053 (C.D. Ill. 2016), *aff'd sub nom. United States v. Kienast*, 907 F.3d 522 (7th Cir. 2018) ("[T]he Court holds Broy did not have a reasonable expectation of privacy in his IP address[.]").

The reason for this is simple: "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties," *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979), and Plaintiff voluntarily "turned over" his IP address to Business Insider, *People v. Stipo*, 195 Cal. App. 4th 664, 669 (2011) ("IP addresses are not merely passively conveyed through third party equipment, but rather are voluntarily turned over in order to direct the third party's servers." (quoting *United States v. Forrester*, 512 F.3d 500, 503 (9th Cir. 2008) ("*Forrester*")).

In fact, California courts have gone even further, specifically finding that "[c]omputer users…have no reasonable expectation of privacy in *electronic data that is not itself content*." *People v. Evensen*, 4 Cal. App. 5th 1020, 1027 n. 4 (2016) (emphasis added). And given that Plaintiff explicitly alleges that the "[t]he Tracker *does not collect the content* of Plaintiff's and the Class's electronic communications with the Website," [ECF No. 19, ¶ 76 (emphasis added)], his entire claim is based on "electronic data that is not itself content" and that he has no reasonable expectation of privacy in.  *See also In re Zynga Priv. Litig.,* 750 F.3d 1098, 1108 (9th Cir. 2014 ("[C]ourts have long distinguished between the contents of a communication (in which a person may have a reasonable expectation of privacy) and record information about those communications (in which a person does not have a reasonable expectation of privacy).").

    *c.*       <u>*Element 3: A Serious Invasion of Privacy*</u>

Even if Plaintiff could establish that he had privacy interest in his IP address and even if he could demonstrate that his expectation of privacy was reasonable, he still would fail to allege

an intangible harm because he has not alleged a "serious invasion." "No community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy." *Hill*, 7 Cal. 4th at 37. For that reason, invasion of privacy claims are limited to invasions that are "sufficiently serious in their nature, scope, and actual or potential impact to constitute an ***egregious breach of the social norms.***" *Id.* (emphasis added). Whether the disclosure of information constitutes an "egregious breach of the social norms" depends on the information being disclosed. For example, in *In re iPhone Application Litig.* 844 F. Supp. 2d 1040 (N.D. Cal. 2012) ("*In re iPhone*"), the court analyzed the information allegedly disclosed—"unique device identifier number, personal data, and geolocation information from Plaintiffs' iDevices"—and found that "such disclosure does not constitute an egregious breach of social norms." *Id.* at 1063. Similarly, in *Folgelstrom v. Lamps Plus, Inc.* 195 Cal. App. 4th 986 (2011), as modified (June 7, 2011), the Court found no "egregious breach of social norms" based on the defendant's alleged unconsented-to collection and use of the plaintiff's residential address. *Id.* at 992. In the court's words, the defendant's conduct was more akin to "routine commercial behavior." *Id.*[2]

The same is true here. Disclosure of Plaintiff's IP address and/or his other non-content "identifying information" is not an "egregious breach of social norms." It is, at most, "routine commercial behavior."

\*\*\*

In order to establish injury-in-fact for Article III standing purposes, Plaintiff was and is required to plausibly allege a concrete injury. Whether under New York or California law, he has

---

[2] *See also id.* at 991 (distinguishing cases in which an egregious breach of social norms had occurred (i.e., "CHP officers' internet dissemination of photographs of the decapitated corpse of an accident victim…and the gratuitous disclosure of a patient's HIV status") from the conduct alleged).)

failed to do that.  His FAC must be dismissed.

II.    **PLAINTIFF HAS NOT ALLEGED AND CANNOT ALLEGE A VIABLE CLAIM UNDER CALIFORNIA'S INVASION OF PRIVACY ACT.**

Although never intended to apply to situations like this, California Penal Code Section 638.51(a) and cases interpreting it implicitly impose two requirements on a plaintiff alleging a violation.  **First,** the plaintiff must allege that the information collected was not voluntarily provided.  **Second**, the plaintiff must allege that the mechanism used to collect the information was a "pen register."  Here, Plaintiff alleges neither.

A.    **Plaintiff Voluntarily Disclosed to Business Insider the Exact Information Plaintiff Claims Business Insider Unlawfully Collected.**

The IP address that Plaintiff claims Business Insider unlawfully collected was necessarily and voluntarily transmitted to Business Insider when Plaintiff visited the Site.  *Columbia Pictures Indus. v. Bunnell, No.* CV 06-1093FMCJCX, 2007 WL 2080419, at *2 (C.D. Cal. May 29, 2007) (noting that when "the website's web server program receives from the user a request for the page[,]…[t]he request includes the IP address of the user's computer, and the name of the requested page or file, among other things").  Indeed, Plaintiff would never have been able to visit the Site had he not provided Business Insider with this information.  *Id.* at *11 (explaining that "defendants…necessarily capture [IP addresses]…. to operate the website.").

For that reason, courts have held that the prohibition against pen registers cannot apply to or penalize basic website browsing. To hold otherwise would, effectively, criminalize the very operation of the Internet. *Licea v. Hickory Farms LLC,* No. 23STCV26148, 2024 WL 1698147, at *4 (Cal.Super. Mar. 13, 2024) (acknowledging that "public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by

a potential plaintiff, thereby providing an IP address for purposes of connecting the website, as a violator").

Courts deciding whether Section 638.51 and its federal analogue apply to a website operator's acquisition of IP addresses have held that they do not. Section 638.51 is patterned after the federal Pen Register Act and closely follows it. *Compare* Cal. Penal Code § 638.51(a) ("a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53") *with* 18 U.S.C. § 3121(a) ("no person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this title"); *compare* Cal. Penal Code § 638.50(b) ("Pen register" means a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication.") *with* 18 U.S.C. § 3127(3), (4) (identical). Because of this, precedent under the analogous Pen Register Act is particularly important. In fact, courts applying other sections of CIPA have found that "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Underhill v. Kornblum*, No. 16-CV-1598-AJB-WVG, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017).

Federal courts have long rejected the application of the Pen Register Act to the collection of IP addresses by website operators. For example, in *Capitol Records Inc. v. Thomas-Rasset*, No. CIV 06-1497(MJD/RLE), 2009 WL 1664468 (D. Minn. June 11, 2009), the court addressed whether the federal Pen Register Act applied to computers connected through a "peer-to-peer network." *Id.* at *1. "Peer-to-peer networks allow Internet users to connect to each other and transfer files directly from user to user. [ ] When files are distributed from one user to another user through a peer-to-peer network, . . . a set of identifying information" including the distributor's IP

address "ties the files back to the user who distributed the files." *Id.* at *3. In *Capitol Records*, the defendant sought to exclude all evidence gathered by a third-party member of the peer-to-peer network, MediaSentry, including "the IP address of the source of the packet" on the grounds that MediaSentry's collection of IP addresses violated the Pen Register Act. *Id*. The court rejected defendant's assertion because "the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them. *If it did apply in those cases, then the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet*." *Id*. at *3 (emphasis added).

Following the reasoning of *Capital Records*, the court in *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013,) rejected the application of the Pen Register Act to the collection of IP addresses online. *Id.* at *4.  There, Malibu Media brought claims against the defendant for copyright infringement of its videos on BitTorrent, a peer-to-peer network. *Id.* at *1. The defendant claimed that Malibu Media had unclean hands because it violated the Pen Register Act by using an investigator to "track[ ] the IP addresses of the users that" shared Malibu titles over BitTorrent. *Id.* at *3. The court disagreed, striking the  defendant's affirmative defense and holding that the Pen Register Act had no application to Malibu Media's conduct: "By participating in [ ] BitTorrent," defendant "consensually engaged in the transaction with [Malibu], and communicated his IP address as part of the packet his computer sent to [Malibu]. *Because the IP address was voluntarily sent*, the Pen Register Act cannot prevent Malibu's investigator from recording that information." *Id*. at *4 (emphasis added).

Likewise, in *Columbia Pictures Indus. v. Bunnell*, also involving a BitTorrent network, the court found the website operator's "collection of incoming IP addresses" was exempt from liability

under the federal Pen Register Act because the website operator "*already and necessarily capture[s] such data . . . to operate the website*." 2007 WL 2080419, at *11 (citing 18 U.S.C. § 3121(a)).

Further, the most recent precedent under the exact statute that Plaintiff asserts here—Section 638.51—has also rejected its application to the collection of IP addresses by a website operator. The Los Angeles Superior Court recently dismissed two analogous Section 638.51 suits against website operators based on their alleged use of "technology" to collect the plaintiffs' IP addresses when the plaintiffs visited their websites. *See Licea*, 2024 WL 1698147; *Casillas v. Transitions Optical, Inc.*, Case No. 23STCV30742 (Cal. Super. Ct. L.A. Cnty. April 23, 2024) ("*Casillas*") (Feldstein Decl., ¶ 4, Ex. B). Citing the Ninth Circuit's decision in *Forrester,* 512 F.3d 500, and the Northern District of California's decision in *Heeger v. Facebook, Inc*., 509 F. Supp. 3d 1182 (N.D. Cal. 2020), the court in *Licea* held a claim could not be maintained against the website operator, Hickory Farms, "where an IP address may be voluntarily disclosed" to Hickory Farms by users whenever they visit its site. *Licea* 2024 WL 1698147, at *4; *see also Heeger*, 509 F. Supp. 3d at 1190 ("[I]t is inevitable that Facebook learns a user's IP address [when visiting its website] because the user is connected to the internet."). The *Licea* court reasoned, consistent with precedent applying the federal Pen Register Act, that because an IP address is *necessarily* disclosed to the website operator, "public policy strongly disputes Plaintiff's potential interpretation of privacy laws as one rendering every single entity voluntarily visited by a potential plaintiff, *thereby providing an IP address for purposes of connecting the website*, as a violator." *Id*. (emphasis added).[3]

---

[3] The *Licea* court sustained defendant's demurrer to the First Amended Complaint with leave to amend. 2024 WL 1698147. Plaintiff did not attempt to amend again, and filed a Request for Dismissal with prejudice on March 25, 2024. The court dismissed the case on March 27, 2024. (Feldstein Decl.,¶ 3,  Ex. A.)

The same is true here. Plaintiff's "IP address was voluntarily sent," *Malibu Media*, 2013 WL 12180709, at *4, to the Site when Plaintiff "visited [it] multiple times . . . on his desktop browser," [ECF No. 19, FAC ¶ 57]. And no different from using "tracking software" (*Casillas*), "packet capture technology" (*Capitol Records*), or an investigator (*Malibu Media*), Business Insider's alleged use of third-party code to capture data *already* provided to it cannot be a violation of California's *penal* law. *Malibu Media*, 2013 WL 12180709, at *3-4; *Capitol Records*, 2009 WL 1664468, at *3; *Licea*, 2024 WL 1698147, at *1. Indeed, "public websites," like the Site here, "log the IP addresses of all visiting users." *United States v. Acevedo-Lemus*, No. SACR 15-00137-CJC, 2016 WL 4208436, at *1 (C.D. Cal. Aug. 8, 2016), *aff'd*, 800 F. App'x 571 (9th Cir. 2020).

*Greenley v. Kochava*, No. 22-cv-01327-BAS-AHG, 2023 WL 4833466 (S.D. Cal. July 27, 2023), relied upon and cited by Plaintiff in the FAC [ECF No. 19, ¶¶ 3, 18], does not require a different result. In *Greenley,* the defendant was not the operator of a website that the plaintiff had voluntarily visited.  The defendant was a "data broker," unknown to the plaintiff, that allowed mobile application developers to use its "software development kit ('SDK')" in exchange for the developers "allow[ing] Defendant to 'surreptitiously intercept location data' from" app users, including the plaintiff. *Id.* at 1035. Furthermore, in *Greenley*, the plaintiff did not complain that the defendant had collected information the plaintiff had voluntarily provided the defendant. Instead, the plaintiff alleged that he never even knew about the defendant, let alone intended to communicate to the defendant his device's "geolocation data," including "visits to 'sensitive locations,'" and "longitude and latitude coordinates." *Id.* at *1-2. Put simply, "[t]he alleged conduct and relationship to the plaintiff " in *Greenley* "was very different from the allegations here." *Casillas*, Order at 3 (Feldstein Decl., ¶ 4, Ex. B) (distinguishing *Greenley*).

At bottom, "[b]ecause [Plaintiff's] IP address was voluntarily sent" to Business Insider, Section 638.51 does not apply. *Malibu Media*, 2013 WL 12180709, at *4. Plaintiff's FAC must be dismissed.

**B.    Plaintiff Does Not Allege That the "Tracker" Is a "Pen Register" under California Law.**

**1.    Under CIPA, Pen Registers Do Not Collect IP Addresses.**

Throughout the FAC, Plaintiff repeatedly refers to the "tracker" as a "pen register." But "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiff must allege *facts* that demonstrate that the "tracker" is, in fact, a "pen register," which, as explained below, he cannot do.

The plain text of Section 638.51 and its legislative history demonstrate that Section 638.51 applies only to telephone-tracking technology, not IP address-collecting software used by a website to "evaluate usage patterns, engage in site marketing analysis, troubleshoot problems, or to gather feedback." *In re Application of the U.S. for an Ord. Pursuant to 18 U.S.C. sec. 2703(d)*, 830 F. Supp. 2d 114, 120 (E.D. Va. 2011).

The California legislature enacted Assembly Bill 929—the genesis of CIPA Sections 638.50 through 638.55—in 2015 to create a comprehensive framework governing how California law enforcement officials could obtain and use a pen register or trap and trace device. *See* Feldstein Decl., ¶ 5 Ex. C (Assembly Bill No. 929, 2015-2016 Regular Session); *Goe v. Zucker*, 43 F.4th 19, 29 (2d Cir. 2022) (legislative history subject to judicial notice). In enacting Assembly Bill 929, the California State Legislature adopted in Section 638.52 the same authorization provision that courts have relied on under the federal Pen Register Act to find that the Act applied only to mechanical, telephone number-tracing technology.

For example, in *Application of U.S. of Am. for an Order Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995), the court addressed whether a "digital analyzer" device, which, like the alleged "Tracker" here, intercepted a cellular telephone's "non-communicative signals," was unlawful under the Pen Register Act, finding that it was not because the Pen Register Act only prohibited the use of "devices that are attached to a telephone line." *Id*. at 200 (citing 18 U.S.C. §§ 3123(b), 3127(3), (4)).  To reach this conclusion, the court relied on the Pen Register Act's authorization provision (18 U.S.C. § 3123), which is the same authorization provision used under CIPA (Cal. Penal Code § 638.52). *Compare* Cal. Penal Code § 638.52 *with* Pub. L. 99-508, Title III, § 301(a) (Oct. 21, 1986) (pre-2001 amendment version of 18 U.S.C. § 3123 in effect at the time that *Cellular Tel. Digital Analyzer* was decided).

Furthermore, the California Legislature specifically limited authorization to use a pen register to instances where law enforcement personnel could identify the person associated with "the telephone line to which the pen register . . . is to be attached." *Id*. § 638.52(d)(1), (3) (emphasis added). This choice of language was intentional. At the time Assembly Bill 929 was enacted by the California legislature, Congress had amended the language in the Federal Pen that the Court interpreted in *Cellular Tel. Digital Analyzer* to encompass IP addresses. *See* 18 U.S.C. § 3123(b)(1)(A) (authorization provision in the post-2001 amendment version of federal Pen Register Act amended to read ". . . the telephone line or other facility to which the pen register . . . is to be attached or applied"); *see also* Feldstein Decl., ¶ 8, Ex. F (U.S. Dep't of Justice, Computer Crime & Intellectual Prop. Sec., Field Guidance on New Authorities that Relate to Computer Crime and Electronic Evidence Enacted in the USA Patriot Act of 2001 (Nov. 5, 2001) (stating that a "facility" may include "a cellular telephone number; a specific cellular telephone identified by its electronic serial number; an Internet user account or e-mail address; or an Internet Protocol

address, port number, or similar computer network address or range of addresses"); *In re U.S.*, 441 F. Supp. 2d 816, 826 (S.D. Tex. 2006) ("[Section 216 of the Patriot Act] [ ] ensures that the pen register and trap and trace provisions apply to facilities other than telephone lines (e.g., the Internet)." (quoting 147 Cong. Rec. S11006–S11007 (Oct. 25, 2001)).   Likewise, unlike in California's counterpart, the amended Section 3123(b)(1)(C) of the federal Pen Register Act now allows applicants to submit "the attributes of the communications to which the order applies" and not just the number of the telephone line, thereby allowing other types of identifiers (e.g., IP addresses) to be used.

Nonetheless, when the California Legislature enacted the statute under which Plaintiff now sues, it declined to adopt the broader, current language used by Congress in the federal Pen Register Act, and only enacted the narrow, pre-amendment language, which courts have held expressly excludes IP addresses. The narrow word choice in Section 638.52 enacted with Section 638.51 reflects a legislative intent to limit "the proscription against pen registers and trap and trace devices to prohibit only devices that are 'attached' to a telephone line," a deliberate choice that "cannot be assumed to be inadvertent." *Cellular Tel. Digital Analyzer*, 885 F. Supp. at 199–200; *see also Lorillard v. Pons*, 434 U.S. 575, 581 (1978) ("Where . . . Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."); *United States v. Pacheco*, 225 F.3d 148, 154 (2d Cir. 2000) (stating that under the "whole act rule," a statutory provision is to be "interpret[ed] . . . in a way that renders it consistent with the tenor and structure of the whole act or statutory scheme of which it is a part.") (citations omitted)).

Beyond its text, the legislative history of Section 638.51 confirms that it was never intended to apply to code embedded in a website that captures IP addresses. The Legislative Counsel's

Digest at the beginning of Assembly Bill 929 explains that the "bill would clarify that any location information obtained by a pen register or a trap and trace device is limited to the information that can be determined *from the telephone number*." Feldstein Decl., ¶ 5 Ex. C at 1 (emphasis added). No reference is made to anything besides telephone numbers. See *Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453, 458 (1974) (statutory interpretation must "yield to" and "must be consistent with the evident legislative intent and, of course, with the effectuation of the purposes intended to be served by the [statute]"); *see* Feldstein Decl., ¶ 6, Ex. D at 12 (Senate Committee on Public Safety Bill Analysis Bill Analysis, A.B. 929, 2015-2016 Regular Session (June 15, 2015)) ("As opposed to a wiretap, a pen register/trap and trace device only records the numbers dialed to or from a particular phone number.") (citing 47 U.S.C. § 1002(a)(2)(B), which relates to "call-identifying information," not IP addresses); Feldstein Decl. ¶ 7, Ex. E at 3 (Assembly Floor Bill Analysis, A.B. 929, 2015-2016 Regular Session (July 8, 2015)) ("One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all outgoing numbers *from a particular telephone line.*"(emphasis added)).

*Greenley* in no way alters this interpretation of CIPA. 2023 WL 4833466. As one court observed, the data allegedly acquired there ("longitude and latitude coordinates" and "sensitive," precise "geolocation data" of mobile app users, *id*. at *1-2) and the data allegedly collected here (IP addresses from a desktop computer) are "apples and oranges for privacy purposes." *Heeger*, 509 F. Supp. 3d at 1190. As *Heeger* recognized, the "key point of distinction" between *Greenley's* "cell-site location information data" ("CSLI") versus "IP addresses" is that "CSLI data is much more sticky and persistent, as it is generated 'several times a minute whenever [a cell phone's] signal is on, even if the owner is not using one of the phone's features.' . . . IP address data is far less finely detailed." *Id*. (quoting *Carpenter v. United States*, 138 S. Ct. 2206, 2218-20 (2018)).

"The collection of IP addresses is a country mile from the CSLI data[.]" *Heeger*, 509 F. Supp. 3d at 1190. There is nothing in the case law or in CIPA's text, legislative history, or statutory framework to support Plaintiff's proposed expansion of Section 638.51 to technology that collects IP addresses.

### 2.     Pen Registers Collect Outbound Dialing Information, Not the Source.

"A pen register is a mechanical device that records the numbers dialed on a telephone by monitoring the electrical impulses caused when the dial on the telephone is released." *See Smith v. Maryland*, 442 U.S. 735, 736 n. 1 (1979); *People v. Larkin*, 194 Cal. App. 3d 650, 653 n.2 (1987) ("A pen register is a mechanical device connected to a telephone number to monitor dialing activity. *It registers the phone numbers dialed to make outgoing calls.*" (emphasis added)). Pen registers enable law enforcement to identify the persons *to whom* targeted individuals in a criminal investigation are speaking. *See, e.g.*, *United States v. Jadlowe*, 628 F.3d 1, 5–6 (1st Cir. 2010) ("Law enforcement agents concluded that 'Uncle Marc' was Jadlowe based on, inter alia, pen register data obtained from Gonsalves's phone showing that Gonsalves frequently exchanged calls with a phone number the agents linked to Jadlowe."). Pen registers do not, by contrast, identify information regarding the source of a communication. *See United States v. Soybel*, 13 F.4th 584, 586–87 (7th Cir. 2021) ("[T]he pen registers recorded the *IP addresses of the websites visited* by internet users within Soybel's apartment.") (emphasis added); *In re Application of U.S. for an Ord. Authorizing Use of a Pen Reg. & Trap On (XXX) Internet Serv. Acct./UserName, (xxxxxxxx@xxx.com)*, 396 F. Supp. 2d 45, 48 (D. Mass. 2005) (explaining a pen register is used "to obtain the internet addresses *accessed* by a person . . . used to determine web-sites visited") (emphasis added).

The only information Plaintiff alleges Business Insider acquired here is an IP address, which, according to Plaintiff, reveals alleged location information pertaining to his desktop computer—the source of his interactions with Business Insider. [ECF No. 19, ¶¶ 2, 22, 24-25, 31, 36-38, 41, 48, 55, 58, 74-75.]. But a "pen register is . . . a device which captures *outgoing* telephone numbers or IP addresses" (*i.e.*, the IP address for the destination servers of the Website or those third parties who supplied the code). *Bunnell*, 2007 WL 2080419, at *11; *see In re Application for Pen Register and Trap/Trace Device with Cell Site Location Authority*, 396 F. Supp. 2d 747, 752 (S.D. Tex. 2005) ("A 'pen register' is a device that records the *numbers dialed* for *outgoing* calls made from the target phone." (emphasis added)). Under the plain meaning of Section 638.50(b), the code about which Plaintiff complains is not a "pen register." Plaintiff's claim, therefore, necessarily fails. The FAC must be dismissed.

## III.    <u>THE FAC SHOULD BE DISMISSED WITH PREJUDICE.</u>

The Court should dismiss Plaintiff's FAC with prejudice. After reviewing Business Insider's pre-motion letter to the Court, which outlined the shortcomings in Plaintiff's original complaint, Plaintiff elected to amend his pleading to try to cure the deficiencies. Plaintiff has failed to cure them. [ECF No. 19.] Given that the FAC fails for the same reasons the Complaint failed, the FAC confirms that Plaintiff cannot state a claim against Business Insider and dismissal with prejudice is warranted. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (affirming denial of leave to amend when plaintiffs had an opportunity to amend after being provided notice of pleading deficiencies). Moreover, no amendment can overcome the fundamental deficiencies of Plaintiff's claim and further amendment would be futile. *See Carroll v. Trump*, 590 F. Supp. 3d 575, 578 (S.D.N.Y. 2022) ("[F]utility of amendment warrants denial of leave to amend.").

**IV.**    **CONCLUSION**

For the reasons stated above, Insider respectfully requests that the FAC be dismissed with prejudice. Plaintiff has failed to allege a concrete injury for Article III standing purposes.  And, even if he had, he has failed to state an actionable claim under the California Invasion of Privacy Act.


Dated:  August 1, 2024                    Respectfully submitted,

                                            BAKER & HOSTETLER LLP

                                            */s/ Robyn M. Feldstein*
                                            Robyn M. Feldstein
                                            Baker & Hostetler LLP
                                            45 Rockefeller Plaza
                                            New York, NY 10111
                                            Tel: 212.589.4200
                                            rfeldstein@bakerlaw.com

                                            Matthew Pearson (*pro hac vice forthcoming*)
                                            Baker & Hostetler LLP
                                            600 Anton Boulevard
                                            Suite 900
                                            Costa Mesa, CA 92626
                                            Tel: 714.754.6600
                                            mpearson@bakerlaw.com

                                            *Attorneys for Defendant*