**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONATHAN GABRIELLI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INSIDER, INC.,<br><br>Defendant. | Case No. 1:24-CV-01566-ER<br><br>Hon. Edgardo Ramos |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT'S MOTION TO DISMISS**

Dated: August 22, 2024

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
aleslie@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**PAGE**


INTRODUCTION ........................................................................................................1

ARGUMENT ............................................................................................................2

I. Plaintiff Alleges Injury-In-Fact Sufficient To Establish Standing Under Article III ............................................................................................ 2

II. Defendant Is Liable For Installing And Using a Pen Register On Plaintiff's Device, Which Caused His IP Addresses To Be Sent To A Third Party................ 8

III. Plaintiff Has Alleged A Violation Of CIPA § 638.51 ......................................... 11

A. CIPA § 638.51 Covers Internet-Based Communications ......................... 11

B. An IP Address Is Outgoing "Routing, Addressing, Or Signaling Information" .............................................................. 15

IV. If The Court Grants Defendant's Motion (And It Should Not), Plaintiff Should Be Given Leave To Amend ..................................................... 18

CONCLUSION ........................................................................................................18

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Application of U.S. of Am. for an Order Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) .... 13

*Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016).... 4, 7

*Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468 (D. Minn. June 11, 2009).... 10

*Carpenter v. United States*, 585 U.S. 296 (2017).... 14

*Columbia Pictures Industries v. Bunnell*, 2007 WL 2080419 (C.D. Cal. May 29, 2017) .... 9

*Davis v. Pacific Telephone & Telegraph,* 127 Cal. 312 (Cal. 1899).... 16

*Doe v. Meta Platforms, Inc.*, 2023 WL 5837443 (N.D. Cal. Sept 7, 2023) .... 14

*Flanagan v. Flanagan*, 27 Cal. 4th 766 (2002) .... 12, 17

*Georgiadis v. First Boston Corp.*, 1992 WL 51500 (S.D.N.Y. Mar. 9, 1992) .... 18

*Gladstone v. Amazon Web Servs., Inc.*, 2024 WL 3276490 (W.D. Wash. July 2, 2024) .... 14

*Greenley v. Kochava*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023).... 10, 13

*Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182 (N.D. Cal. 2020) .... 9

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) .... 15

*In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) .... 3, 4, 5

*In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922 (N.D. Cal. 2015) .... 12

*In re Google Inc. Cookie Placement Consumer Privacy Litig.*,
934 F.3d 316 (3d Cir. 2019)........................................................................... 3, 4, 5

*In re Google Inc.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ................................................... 12, 16

*James v. Disney*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ............................................................... 3, 15

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. 2022) ................................................................... 12, 17

*Jones v. Ford Motor Co.*,
85 F.4th 570 (9th Cir. 2023) .................................................................................. 4

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023) ................................................................. 5

*Licea v. Hickory Farms LLC*,
2024 WL 1698147 (Cal. Super. March 13, 2024) ................................................... 9

*Licea v. Hickory Farms LLC*,
2023 WL 11113637 (Cal. Super. Dec. 4, 2023) ...................................................... 9

*Luis v. Zang*,
833 F.3d 619 (6th Cir. 2016) ............................................................................... 15

*Malibu Media, LLC v. Pontello*,
2013 WL 12180709 (E.D. Mich. Nov. 19, 2013).................................................. 10

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ...................................................... 12

*McCarthy v. Dun & Bradstreet Corp.*,
482 F.3d 184 (2d Cir. 2007)................................................................................. 18

*Moody v. C2 Educational Systems Inc.*,
2024 WL 3561367 (C.D. Cal. July 25, 2024)....................................................... 13

*Mount v. PulsePoint, Inc.*,
684 F. App'x 32 (2d Cir. 2017) ..................................................................... 3, 4, 5

*Murray v. National Association of Realtors*,
2023 WL 7726173 (E.D. Mich. Nov. 15, 2023)...................................................... 6

*People v. Shapiro*,
50 N.Y.2d 747 (1980) ............................................................................................ 4

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (2019)........................................................................................ 15

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........................................................................................ passim

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)........................................................................................ 2

*United States v. Jean*,
207 F. Supp. 3d 920 (W.D. Ark. 2016)........................................................................ 7

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,
489 U.S. 749 (1989)........................................................................................ 4

*Underhill v. Kornblum*,
2017 WL 2869734 (S.D. Cal. Mar. 16, 2017) ........................................................ 15

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) ........................................................................ 14

*United States v. Hutchins*,
361 F. Supp. 3d 779 (E.D. Wis. 2019)........................................................................ 14

*United States v. Jones*,
565 U.S. 400 (2012)........................................................................................ 6

*United States v. Soybel*,
13 F.4th 584 (7th Cir. 2021) ........................................................................ 14, 16

*United States v. Taketa*,
923 F.2d 665 (9th Cir. 1991) ........................................................................ 7

*United States v. Ulbricht*,
858 F.3d 71 (2d Cir. 2017)........................................................................ 14, 16

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (N.D. Cal. 2023) ........................................................ 5, 15

**STATUTES**

Cal. Penal Code § 630........................................................................................ 1

Cal. Penal Code § 638.50........................................................................................ passim

Cal. Penal Code § 638.51........................................................................ 2, 11, 12, 18

**RULES**

Fed. R. Civ. P. 15(a) .......... 18

Plaintiff Jonathan Gabrielli ("Plaintiff") respectfully submits this Opposition to Defendant Insider, Inc.'s ("Insider" or "Defendant") Motion to Dismiss (ECF No. 24) ("Motion" or "MTD").

**INTRODUCTION**

When the California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*. ("CIPA"), it recognized "the development of new devices and techniques for the purpose of eavesdropping upon private communications … has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630. Further, as the California Supreme Court has held, the intent of the CIPA is to protect the right of Californians to control who does and does not get to learn personal information about them:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.
>
> …
>
> [S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (cleaned up).

This is the privacy right Defendant breached here. Specifically, when Plaintiff visited Defendant's website, businessinsider.com (the "Website"), Defendant caused a third-party tracker operated by Audiencerate to be installed on Plaintiff's and Class Members' web browsers (the "Tracker"). First Amended Complaint (ECF No. 19) ("FAC") ¶¶ 20-23, 35-38, 44-49, 57-62. Defendant's conduct caused Plaintiff's and Class Members' personal information—their IP addresses—to be sent to a third party (Audiencerate), improperly and without consent. *Id*. An IP

address is personal information because it discloses a user's location, which is certainly something users retain the right to choose who knows and who does not. *Id.* ¶¶ 23-31. Further, Defendant's installation of this third-party tracker is not innocuous. Instead, when Audiencerate received Plaintiff's and Class Members' IP addresses, it used this information to bolster Defendant's marketing, advertising, analytics, and revenue-generating efforts. *Id.* ¶¶ 33-35, 56.

In sum, Plaintiff alleges Defendant installed a third-party tracker on Plaintiff's and Class Members' browsers, which caused Plaintiff's and Class Members' location (via their IP addresses) to be sent to a third party (without consent), and that Defendant partnered with this third party (Audiencerate) to enrich itself off this improperly disclosed information (without compensation or consent). Plaintiff alleges Defendant's conduct violates CIPA § 638.51, which prohibits the unconsented-to installation and use of "pen registers" and "trap and trace devices."

Though Defendant raises a bevy of legal arguments in its Motion, not once does Defendant dispute the underlying conduct: that Defendant installed trackers that disclosed users' IP addresses to a third party (Audiencerate), and did so for marketing, advertising, and revenue-generating purposes. And for the reasons set forth below, each of Defendant's arguments is without merit. The Motion should be denied.

## ARGUMENT

### I. PLAINTIFF ALLEGES INJURY-IN-FACT SUFFICIENT TO ESTABLISH STANDING UNDER ARTICLE III

Defendant argues Plaintiff has not suffered an injury-in-fact because "intangible harms do not arise simply because the plaintiff alleges that the defendant violated a statute." MTD at 7 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021)). Defendant further contends that Plaintiff does not have a legally protected privacy interest because "IP addresses are not now, nor have they ever been, private information." MTD at 9. But, as the Third Circuit has aptly noted,

"[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion [Defendant] makes—that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data—is untenable." *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("*In re Google*"); *see also Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 34 (2d Cir. 2017) ("PulsePoint's alleged unauthorized accessing and monitoring of plaintiffs' web-browsing activity implicates harms similar to those associated with the common law tort of intrusion upon seclusion so as to satisfy the requirement of concreteness.").

*First*, Defendant misstates the law in arguing, "to allege an invasion of privacy under California law, the plaintiff must demonstrate: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) a serious invasion of privacy interest." MTD at 9 (cleaned up). Defendant conflates the requirements of a common law claim for invasion of privacy with whether Defendant's conduct injured Plaintiff vis-à-vis an invasion of his privacy sufficient for Article III standing. Regardless, as a California district court explained:

> the Court rejects Disney's argument that Plaintiffs must show that any interception of information was highly offensive in order to have standing. Disney assumes that the closest analogue is a claim for intrusion upon seclusion. However, the Ninth Circuit's decision in *In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), establishes that there are other kinds of privacy rights fairly at issue here. In *Facebook*, the plaintiffs filed suit based on Facebook's practice of using plug-ins to track users' browsing histories when they visited third-party websites. *See id.* at 596. The Ninth Circuit held that the plaintiffs had standing to assert, e.g., their privacy-based claims (both statutory and common law) because the right to privacy encompasses the individual's control of information concerning his or her person. *Id.* at 598. That is the privacy right being claimed by Plaintiffs here.

*James v. Disney*, 701 F. Supp. 3d 942, 949 (N.D. Cal. 2023) (internal quotations and brackets removed). In other words, the privacy interests articulated by Defendant are not the only ways in

which someone's privacy may be invaded for Article III standing purposes. Indeed, Defendant's position is contradicted by the Supreme Court, which has explained that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or his person." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-64 (1989); *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook*") ("A right to privacy encompasses the individual's control of information concerning his or his person.") (cleaned up); *In re Google*, 934 F.3d at 325 ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."); *Mount*, 684 F. App'x at 34 ("PulsePoint's alleged unauthorized accessing and monitoring of plaintiffs' web-browsing activity implicates harms similar to those associated with the common law tort of intrusion upon seclusion so as to satisfy the requirement of concreteness.").

Plaintiff's allegations here—that Defendant's installation of a pen register on Plaintiff's browser caused his IP address to be improperly collected by a third party (Audiencerate) and used for marketing purposes without his consent—fall within these parameters. *See Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427, 438 (S.D.N.Y. 2016) (finding Article III standing where "[p]laintiffs allege that Defendant disclosed protected information about Plaintiffs in two ways: by selling it to third parties, and by providing it to 'data mining' companies who then supplemented it with additional data to enhance the value of the information for Defendant").

Furthermore, "the relevant law is settled" that when a wiretapping statute like CIPA that "codifies such substantive privacy rights" is violated, such a violation "gives rise to a concrete injury sufficient to confer standing." *Jones v. Ford Motor Co*., 85 F.4th 570, 574 (9th Cir. 2023); *see also People v. Shapiro*, 50 N.Y.2d 747, 763 (1980) ("The provisions of title 3 do more than

codify bare constitutional requisites; they manifest a Congressional design to protect the privacy of wire and oral communications…"); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969-70 (N.D. Cal. 2023) ("Statutes such as [the California and Pennsylvania wiretapping laws] thus codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.") (cleaned up); *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1103 (C.D. Cal. 2023) (same as to California wiretapping law). Because CIPA codifies the aforementioned privacy harm—the right to control one's personal information—a violation of CIPA is sufficient to allege an injury-in-fact. *See In re Facebook*, 956 F.3d at 599 ("[T]he legislative history and statutory text demonstrate that … the California legislature intended to protect … historical privacy rights when [it] passed CIPA."); *Ribas*, 38 Cal. 3d at 361 (1985) (noting CIPA was enacted to protect "the right to control the nature and extent of the firsthand dissemination of [] statements").

*Second*, Defendant is wrong that Plaintiff "has no reasonable expectation of privacy in an IP address." MTD at 10. Courts have found the disclosure of web browsing information is sufficient to confer Article III standing. *See*, *e.g.*, *Mount*, 684 F. App'x at 34-35 ("The cases themselves … do not signal that individual identification is required for standing purposes, nor does the common law tort of intrusion upon seclusion."); *In re Facebook*, 956 F.3d at 596 (concrete injury alleged where Facebook collected "the website's Uniform Resource Locator ('URL') that was accessed by the user" and "the third-party website's Internet Protocol ('IP') address, which reveals only the owner of the website"); *In re Google*, 934 F.3d at 325 ("History and tradition reinforce that a concrete injury for Article III standing purposes occurs when … any [] third party, tracks a person's internet browser activity without authorization."). And while Defendant contends some of the information here is voluntarily "turned over" to Defendant (MTD at 11), "a person may retain a privacy interest in information that is public in some other form because both

the common law and the literal understandings of privacy encompass the individual's control of information concerning his or his person." *Murray v. National Association of Realtors*, 2023 WL 7726173, at *5 (E.D. Mich. Nov. 15, 2023) (cleaned up). To that end, there is a significant difference, as recognized in *Ribas*, between turning over information to the other party to the communication, and that same information being collected without consent by an unseen third party (Audiencerate).[1]

Plaintiff's allegations also go far beyond the mere collection of IP addresses. Rather, the data is then shared with Audiencerate and used for pecuniary gain. Plaintiff alleges that when a user accesses Defendant's website, Defendant's server causes the Tracker to be installed on the user's browser. The Tracker in turn sends "[i]dentifying information – including the user's IP address to Audiencerate [the software-as-service companies that provides the Tracker to Defendant for a fee]." FAC ¶¶ 22, 31, 40, 47.

Plaintiff further alleges:

> The IP address is a unique identifier for a device, which is expressed as four sets of numbers separated by periods (*e.g.*, 192.168.123.132). The first two sets of numbers indicate what network the device is on (*e.g.*, 192.168), and the second two sets of numbers identify the specific device (*e.g.*, 123.132).
>
> Thus, the IP address enables a device to communicate with another device—such as a computer's browser communicating with a server—*and* the IP address contains geographical location. Through

[1] In any event, as Justice Sotomayor observed in her concurring opinion in *United States v. Jones*:

> it may be necessary to reconsider the premise that an individual has no reasonable expectation of privacy in information voluntarily disclosed to third parties. This approach is ill suited to the digital age, in which people reveal a great deal of information about themselves to third parties in the course of carrying out mundane tasks … I for one doubt that people would accept without complaint the warrantless disclosure to the government of a list of every Web site they had visited in the last week, or month, or year.

*United States v. Jones*, 565 U.S. 400, 417-18 (2012) (Sotomayor, J., concurring) (cleaned up).

> an IP address, the specific device's state, city, and zip code can be determined.

FAC ¶¶ 23, 24. The collection of an IP address thus enables advertisers to target customers by locations as granular as a zip code, and to target specific households, business, and individuals with relevant advertising. *Id.* ¶ 27. And Defendant causes this collection to occur through the installation of the Tracker to monetize its Website and maximize revenue. *Id.* ¶ 56; *see also Boelter*, 192 F. Supp. 3d at 438 (S.D.N.Y. 2016) (finding Article III standing where "[p]laintiffs allege that Defendant disclosed protected information about Plaintiffs in two ways: by selling it to third parties, and by providing it to 'data mining' companies who then supplemented it with additional data to enhance the value of the information for Defendant"). All of this is done without the user's consent. *Id.* ¶ 60. Thus, Plaintiff has also been injured by Defendant's nonconsensual profiting off of his personal information.

Defendant's cases involving the permissibility of collecting IP addresses under the Fourth Amendment are irrelevant. Those cases address the collection of IP addresses by law enforcement. But there is a Federal Pen Register Act that expressly permits law enforcement officials—but not others, like the third party (Audiencerate) here—to collect IP addresses. *See*, *e.g.*, *United States v. Jean*, 207 F. Supp. 3d 920, 932 (W.D. Ark. 2016) ("a pen register … does not require a warrant to install" by law enforcement). Based on this, it is clear Congress believed that persons do indeed have a reasonable expectation of privacy in their IP addresses and from preventing the disclosure of their IP addresses to non-law enforcement individuals or companies. In any event, it is well established that "Fourth amendment standing is quite different … from 'case or controversy' determinations of article III standing." *United States v. Taketa*, 923 F.2d 665, 669 (9th Cir. 1991).

On top of the fact that the IP address is Plaintiff's own—not that of the Website—the information here (i) was collected by a third party (Audiencerate), not just the Website, without

consent; and (ii) the information is being appropriated by third parties to ascertain a user's identity, drive revenue for the Website, and target advertising at the user based on their location, not merely to direct internet traffic. Thus, at least for the purposes for which an IP address is being used in this action, Plaintiff has suffered an injury in fact sufficient for Article III standing.[2]

## II. DEFENDANT IS LIABLE FOR INSTALLING AND USING A PEN REGISTER ON PLAINTIFF'S DEVICE, WHICH CAUSED HIS IP ADDRESSES TO BE SENT TO A THIRD PARTY

Defendant contends "pen registers cannot apply to or penalize basic website browsing" because Plaintiff's IP address "was necessarily and voluntarily transmitted to Business Insider when Plaintiff visited the Site." MTD at 13. Defendant misconstrues Plaintiff's allegations. Plaintiff's claim is *not* that his IP address was disclosed to Defendant. Instead, Plaintiff's claim is that Defendant installed a "pen register" (the Tracker) on his browser, which caused Plaintiff's IP address to be sent to a *third party*. FAC ¶¶ 22, 36-38, 48, 54.

Whether sharing Plaintiff's IP address is required to operate the Website, there is nothing "necessary" about disclosing Plaintiff's IP address to a third-party for marketing, advertising, and data analytics purposes. As the California Supreme Court has held, this accords with the purpose of CIPA:

> While one who imparts private information risks the betrayal of his confidence by the other party, a substantial distinction has been recognized between the secondhand repetition of the contents of a conversation and its simultaneous dissemination to an unannounced second auditor, whether that auditor be a person or mechanical device.

[2] Defendant also asserts Plaintiff does not have standing because "there is no common-law right of action for invasion of privacy under New York law." MTD at 8 (cleaned up). Again, Defendant conflates the requirements of an invasion of privacy cause of action and a privacy injury sufficient for Article III standing. Regardless, Plaintiff does not assert a claim for the common law tort of invasion of privacy, and Plaintiff does not bring a claim under New York law. Accordingly, New York law is inapplicable here. Finally, even if Defendant's argument had merit (it does not), it would not preclude a finding of injury based on Defendant's appropriation and profiting off of Plaintiff's personal information.

> …
>
> [S]uch secret monitoring denies the speaker an important aspect of privacy of communication—the right to control the nature and extent of the firsthand dissemination of his statements.

*Ribas*, 38 Cal. 3d at 360-61. Thus, the claim here is that a third party simultaneously and improperly acquired Plaintiff's IP address through Defendant's installation and use of a pen register, *not* that Defendant itself acquired Plaintiff's IP address.

For this reason, Defendant's cited authorities are all distinguishable. In *Licea v. Hickory Farms LLC*, 2024 WL 1698147 (Cal. Super. March 13, 2024), the plaintiff did not allege the defendant shared his IP address with a third party. First Amended Complaint, *Licea v. Hickory Farms LLC*, Case No. 23STCV26148, 2023 WL 11113637 (Cal. Super. Dec. 4, 2023). Instead, the plaintiff alleged the defendant "knowingly and intentionally deployed a software device" on to its own website for its own "identity resolution efforts." *Id.* ¶ 17. Thus, the *Licea* court reasoned there was "consent under the guise of visiting a website," because the defendant could not otherwise be able to host a website. *Licea*, 2024 WL 1698147, at *4. Here, however, Plaintiff alleges Defendant installed a pen register that disclosed his information to a *third party*. *See*, *e.g.*, FAC ¶ 22.

Similarly, in *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020), the allegations were that "Facebook collected plaintiffs' IP addresses … only when they were using the Facebook app or were visiting Facebook's website." Thus, unlike here, Facebook was not a third party receiving IP addresses. Similarly, in *Columbia Pictures Industries v. Bunnell*, 2007 WL 2080419, at *11 (C.D. Cal. May 29, 2017), the defendant's website itself was the recipient of the IP address, not a third party. Further, the collection of users' IP addresses *by the website* was necessary for the operation and maintenance of the website. *Id.* Here, on the other hand, it is not

necessary for the functioning of a website for a third-party advertising and marketing service to collect users' IP addresses to "analyze Website data and marketing campaigns, conduct targeted advertising, and ultimately boost Defendant's and advertisers' revenue." FAC ¶ 51.

In *Capitol Records Inc. v. Thomas-Rasset*, 2009 WL 1664468, at *3 (D. Minn. June 11, 2009), in addition to the user consenting to the disclosure of the IP address, the court held "the Pen Register Act cannot be intended to prevent individuals who receive electronic communications from recording the IP information *sent to them*." (Emphasis added). But again, Plaintiff's claim is not that his IP address was sent to Defendant, the only entity with whom Plaintiff was directly communicating. *See also id.* ("MediaSentry, as a party to th[e] communication, simply recorded the information transmitted to it from Thomas–Rasset's computer."). Likewise, in *Malibu Media, LLC v. Pontello*, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013), the IP address was also sent to another party to the communication, not a third party. *Id.*, at *4 ("By participating in the BitTorrent swarm Pontello consensually engaged in the transaction with IPP, and communicated his IP address as part of the packet his computer sent to IPP.").

Finally, Defendant attempts to distinguish *Greenley v. Kochava*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023), but its argument is unpersuasive. There, the defendant was a data broker that provided software developer kits ("SDK") to software developers to assist in developing apps. *Id.* at 1035. Defendant coded its SDK for data collection and embedded it in mobile applications, the SDK collected app users' data, and then the defendant sold that data to clients for advertising purposes. *Id*. Defendant suggests, unlike *Greenley*, Business Insider only collected and shared data that was "voluntarily provided" to Business Insider as a means to operate its Website. MTD at 17. Despite Defendant's contention, like *Greenley*, it was *not* necessary for Defendant to disclose Plaintiff's IP address to third parties for the Website to function. Further, there is a

"substantial distinction" "between the secondhand repetition of the contents of a conversation"—which is what Defendant claims occurred here—"and its simultaneous dissemination to an unannounced second auditor"—which is what Plaintiff alleges occurred. *Ribas*, 38 Cal. 3d at 360. Defendant also argues this case is distinguishable because the *Greenley* defendant was a third-party data broker that provided the software to developers, whereas, here, Defendant merely owns and operates the Website. MTD at 17. On the contrary, the third-party here, like the *Greenley* defendant, used the improperly collected user information for marketing, advertising, or data analytics purposes without the users' consent.[3] And the pen register statute penalizes those who *install* or use pen registers, which Defendant did. Cal. Penal Code § 638.51(a); *see also* FAC ¶¶ 12, 22, 31. Third-party code does not appear on the Website by accident, it must be affirmatively placed on the Website and programmed by Defendant. *See id.*

In sum, Plaintiff's claim is that his IP address was collected by a *third party* through Defendant's use and installation of the Tracker, not that Defendant itself collected Plaintiff's IP address. Defendant cannot argue in good faith that Plaintiff's IP address was voluntarily provided to the third party (Audiencerate), nor that the third party's collection of his IP address for marketing, advertising, or data analytics was necessary to make Defendant's Website function.

## III. PLAINTIFF HAS ALLEGED A VIOLATION OF CIPA § 638.51

### A. CIPA § 638.51 Covers Internet-Based Communications

Defendant argues the "plain text of Section 638.51 and its legislative history demonstrate that Section 638.51 applies only to telephone-tracking technology, not IP address-collecting software." MTD at 18. This is wrong. As the Ninth Circuit has explained, "[t]hough written in

[3] The court in *Casillas v. Transitions Optical, Inc.*, Case No. 23STCV30724 (Cal. Super. April 23, 2024) (filed as Jones Decl., Ex. 10 (ECF No. 20-11)) did not analyze *Greenley* in depth. Instead, the court sustained the demurrer because "the Complaint ma[de] inappropriate and conclusory legal arguments" and "allege[d] few ultimate facts." *Id.*

terms of wiretapping, [CIPA] applies to Internet communications." *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at *1 (9th Cir. 2022); *see also In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 936 (N.D. Cal. 2015) (noting that courts have "squarely rejected" the argument that CIPA "should be narrowly construed and should not be applied to electronic communications").

This comports with the broad language of CIPA § 638.50(b), which defines "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire *or electronic communication* is transmitted." (emphasis added). It also comports with the fact that "the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, 2013 WL 5423918, at *21 (N.D. Cal. Sept. 26, 2013). And it comports with the fact that "the California legislature intended for CIPA to establish broad privacy protections [which] supports an expansive reading of the statute." *Id.*; *see also Flanagan v. Flanagan*, 27 Cal. 4th 766, 775 (2002) ("In enacting [CIPA], the Legislature declared in broad terms its intent to protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society.") (cleaned up). "Thus, when faced with two possible interpretations of CIPA, the California Supreme Court has construed CIPA in accordance with the interpretation that provides the greatest privacy protection." *Matera v. Google Inc.*, 2016 WL 8200619, at *19 (N.D. Cal. Aug. 12, 2016) (citing *Ribas*, 38 Cal. 3d at 360-61).

Indeed, two California district courts have already determined that CIPA §§ 638.50 and 638.51 extend beyond telephone surveillance to include internet communications. *Greenley*, 684 F. Supp. 3d at (noting "the Court cannot ignore the expansive language in the California

Legislature's chosen definition" in finding software was a "pen register"); *Moody v. C2 Educational Systems Inc.*, 2024 WL 3561367, at *3 (C.D. Cal. July 25, 2024) (same).

*Moody* is particularly instructive. In that case, the court also found that the California pen register statute covers internet communications, including IP addresses. *Moody*, 2024 WL 3561367, at *3.[4] First, *Moody* the court was unpersuaded by the defendant's argument that pen registers are limited to telephones because the defendant "fail[ed] to explain why the definition[] under § 638.50 should be so limited given [its] reference[] to 'wire or electronic communication.'" *Id.*; *see also* MTD at 18. Next, the *Moody* court rejected the defendant's argument that because § 638.52—which authorizes law enforcement's use of pen registers—refers to telephone lines, then § 638.50 should be interpreted to only apply to telephones. *Moody*, 2024 WL 3561367, at *2; *see also* MTD at 18-19. The *Moody* court explained the "definition[] set forth under § 638.50 do[es] not state any such requirement." *Moody*, 2024 WL 3561367, at *2. Furthermore, as the *Moody* court explained, "§ 638.50's language 'indicates courts should focus less on the form of the data collector and more on the result." *Id.* (quoting *Greenley,* 684 F. Supp. 3d at 1050). Last, the *Moody* court found the defendant's reliance on *Application of U.S. of Am. for an Order Authorizing Use of a Cellular Tel. Digital Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995), for the proposition that the statute is limited to telephones, unpersuasive because that "case concerned federal law, not California law." *Moody*, 2024 WL 3561367, at *2. Here, too, Business Insider's reliance on *Application of U.S. of Am. for an Order Authorizing Use of a Cellular Tel. Digital*

---

[4] The *Moody* court noted the plaintiff also alleged the collection of "browser and device data." *Moody*, 2024 WL 3561367, at *3. If necessary, Plaintiff can amend to include such allegations were collected by the third party here based on the same data pulled from Defendant's Website and Plaintiff's device. FAC ¶¶ 38, 58.

*Analyzer* is unpersuasive because it analyzes technology from nearly thirty years ago. *See* MTD at 19.

Even if this Court looks to the federal equivalent of the California pen register statute, the analysis does not change. The Second Circuit has clearly held the "recording of IP address … [is] precisely analogous to the capture of telephone numbers." *United States v. Ulbricht*, 858 F.3d 71, 97 (2d Cir. 2017), *abrogated on other grounds*, *Carpenter v. United States*, 585 U.S. 296 (2017); *see also United States v. Soybel*, 13 F.4th 584, 594 (7th Cir. 2021) ("[A]n IP pen register is analogous in all material respects to a traditional telephone pen register."); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("the surveillance techniques [or recording IP addresses] are constitutionally indistinguishable from the use of a pen register that the Court approved in Smith"). This is because an IP address "reveal[s] the existence of connections between communications devices without disclosing the content of the communication." *Ulbricht*, 858 F.3d at 97; *see also Forrester*, 512 F.3d at 510 ("IP addresses constitute addressing information and do not necessarily reveal any more information about the underlying contents of the communication than do phone numbers").

Finally, the Court should note that defendants have long made the same argument that both federal and state wiretapping statutes only apply to telephonic equipment or physical devices and do not apply to software. Yet, "[t]he majority of courts to consider this issue have entertained the notion that software may be considered a device for the purpose of the [Federal] Wiretap Act" and its state law equivalents, including the CIPA. *United States v. Hutchins*, 361 F. Supp. 3d 779, 795 (E.D. Wis. 2019) (collecting cases); *see also*, *e.g.*, *Gladstone v. Amazon Web Servs., Inc.*, --- F, Supp. 3d ---, 2024 WL 3276490, at *8 (W.D. Wash. July 2, 2024) ("[T]he Court finds that 'device,' as used in Section 632, can include software."); *Doe v. Meta Platforms, Inc*. 2023 WL

5837443, at *7 (N.D. Cal. Sept 7, 2023) ("I agree that the Pixel software is a device under [CIPA] section 632(a)."); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1084 (N.D. Cal. 2015) ("Plaintiffs have sufficiently alleged that the Carrier IQ Software is a 'device' for purposes of the Wiretap Act."); *Revitch*, 2019 WL 5485330, at *3 (under CIPA § 635, finding "NaviStone's code is a device … primarily or exclusively designed or intended for eavesdropping upon the communication of another.") (cleaned up); *Luis v. Zang*, 833 F.3d 619, 634 (6th Cir. 2016) (holding plaintiff plausibly alleged that computer software was "a device … primarily useful for [] the surreptitious interception of [] electronic communications" under Federal Wiretap Act) (cleaned up); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 975 (N.D. Cal. 2023) (denying motion to dismiss Pennsylvania wiretapping claim where the defendant challenged that software was a "device"); *James*, 701 F. Supp. 3d at 957 (same). Given the federal pen register statute is part of the Electronic Communications Privacy Act (*i.e.*, the Federal Wiretap Act), and the California pen register statute is part of the broader CIPA, there is no reason to reach a different conclusion here than courts interpreting wiretap acts at large.

### B. An IP Address Is Outgoing "Routing, Addressing, Or Signaling Information"

Defendant contends the Trackers are not pen registers because the IP address is not "outgoing information" under CIPA § 638.50. MTD at 22-23. Defendant's narrow reading of the statute is contrary to the California Legislature's intent.

As an initial matter, the federal equivalent of CIPA § 638.50 statute implicates IP addresses, regardless of whether it is the individual users' IP address or the visited website's IP address.[5] Indeed "an IP pen register is analogous in all material respects to a traditional telephone

[5] "The analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Underhill v. Kornblum*, 2017 WL 2869734, at *6 (S.D. Cal. Mar. 16, 2017).

pen register." *Soybel*, 13 F.4th at 94; *see also Ulbricht*, 858 F.3d at 97 ("recording of IP address ... [is] precisely analogous to the capture of telephone numbers"). Although CIPA was enacted before the Internet was created, "the California Supreme Court regularly reads statutes to apply to new technologies where such a reading would not conflict with the statutory scheme." *In re Google Inc.*, 2013 WL 5423918, at *21. "For example, in a previous evolution in communications technology, the California Supreme Court interpreted 'telegraph' functionally, based on the type of communication it enabled." *Id.* "In *Davis v. Pacific Telephone & Telegraph* [127 Cal. 312, 316 (Cal. 1899)], the Supreme Court held that '*telegraph* lines' … included *telephone* lines because 'the idea conveyed by each term is the sending of intelligence to a distance … thus the term 'telegraph' means any apparatus for transmitting messages by means of electric currents and signals." *Id.* (emphasis in original).

Here, the statute defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Put differently, a pen register records the "outgoing" information from a person that is being surveilled. FAC ¶¶ 15-17.[6] And an IP address at least constitutes "routing, addressing, or signaling information" because it identifies a specific device and divulges a user's location. *Id.* ¶¶ 23-27. Accordingly, the collection of IP addresses by a third party falls within the purview of CIPA § 638.50(b).

---

[6] As opposed to a "trap and trace" device, that records information that is *incoming* to the individual being surveilled. Regardless, pen registers and trap and trace devices are almost always used together, and thus, courts generally discuss them as one. *See*, *e.g.*, *Soybel*, 13 F.4th at 586 n.2 ("For the sake of simplicity, we use the term "pen register" to refer to both [pen registers and trap and trace devices]."). Further, the definition of both pen registers and trap and trace devices prohibits the collection of "dialing, routing, addressing, or signaling information." Cal. Penal Code §§ 638.50(b)-(c).

Defendant's arguments to the contrary are unpersuasive. *First*, Defendant argues the statute cannot cover a user's IP address because the collected information "identif[ies] information regarding the source of a communication" rather than "the persons *to whom* targeted individuals … are speaking." MTD at 22 (emphasis in original). However, the statute does not limit *who* the recorded information must regard. Cal. Penal Code § 638.50(b). Regardless, CIPA is intended to "protect the right of privacy of the people of this state from what it perceived as a serious threat to the free exercise of personal liberties that cannot be tolerated in a free and civilized society." *Flanagan*, 27 Cal. 4th at 775 (cleaned up). As the California Supreme Court explained, "[t]his philosophy appears to lie at the heart of virtually all the decisions construing [CIPA]." *Id.* This prohibition does not extend only to literal "eavesdropping upon private communications," as Defendant suggests. MTD at 14 (quoting CIPA § 630). *See also Javier*, 2022 WL 1744107, at *1 ("Though written in terms of wiretapping, [CIPA] applies to Internet communications."). Thus, the entire purpose of the statute is to protect the privacy of the individual speaker (Plaintiff) rather than the recipient.

Regardless, even if Defendant were correct, this would just mean the Tracker is a "trap and trace device" because it collects "electronic or other impulses that identify the originating … routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication." CIPA § 638.50(c). An IP address fits within this definition for the same reasons set forth above.

*Second*, Defendant contends the collection of IP addresses does not fall within the statute because it is not outgoing information. MTD at 23. Again, even if Defendant were correct (it is not for the reasons articulated in the FAC), this would just mean the Tracker is a "trap and trace device."

Accordingly, Defendant's argument—that CIPA § 638.50 cannot apply to IP addresses because it is outgoing information about a user's location—is incorrect. This is exactly the type of information that the California Legislature intended to protect. At worst, Defendant's arguments would mean Plaintiff has alleged a violation of CIPA § 638.51(a) based on Defendant's installation and use of a trap and trace device.

## IV. IF THE COURT GRANTS DEFENDANT'S MOTION (AND IT SHOULD NOT), PLAINTIFF SHOULD BE GIVEN LEAVE TO AMEND

Should the Court grant Defendant's Motion, the FAC should not be dismissed with prejudice. Plaintiff has only amended the complaint once, in response to Defendant's pre-motion letter to the Court. "Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend 'shall be freely given when justice so requires.'" *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Thus, should the Court grant Defendant's Motion (it should not), it should be without prejudice and with leave to amend. *See Georgiadis v. First Boston Corp.*, 1992 WL 51500, at *1 (S.D.N.Y. Mar. 9, 1992) (rejecting the defendant's argument that "leave to amend should not have been granted, because plaintiff has amended his complaint once before" and noting "the Court does not believe it proper to dismiss the action with prejudice after the first judicial review of the pleadings").

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests the Court deny Defendant's Motion in its entirety. If the Court grants the Motion in any respect, Plaintiff respectfully requests leave to amend to cure any such deficiencies.

Dated: August 22, 2024

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: */s/ Yitzchak Kopel*
Yitzchak Kopel

Yitzchak Kopel
Alec M. Leslie
Max S. Roberts
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: ykopel@bursor.com
aleslie@bursor.com
mroberts@bursor.com

*Attorneys for Plaintiff*