**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONATHAN GABRIELLI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INSIDER, INC.,<br><br>Defendant. | Case No. 1:24-CV-01566-ER |

**DEFENDANT INSIDER, INC.'S REPLY**
**IN SUPPORT OF MOTION TO DISMISS THE**
**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

BAKER & HOSTETLER LLP
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201

*Attorneys for Defendant INSIDER, INC.*

## TABLE OF CONTENTS


INTRODUCTION .......... 1

ARGUMENT .......... 2

I. PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT. .......... 2

A. The Use of an Alleged Pen-Register / Trap-and-Trace Device Does Not Result in an Injury-in-Fact. .......... 2

B. Non-Private Information Does Not Become Private Because It is Shared. .......... 4

C. A Violation of CIPA's Pen Register / Trap-and-Trace Statute Is Not a *Per Se* Injury-in-Fact. .......... 5

D. Plaintiff Does Not Have a Reasonable Expectation of Privacy in His IP Address. .......... 7

II. PLAINTIFF HAS NOT ALLEGED THE USE OF A PEN REGISTER. .......... 8

A. Under § 638.51, How Information Is Used After It Is Collected Is Immaterial. .......... 8

B. The *Moody* Decision Is Inapposite. .......... 9

III. CONCLUSION .......... 10

## INTRODUCTION

In deciding a Motion to Dismiss, courts are not required to forego common sense; indeed, they are instructed to draw on it. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). Common sense dictates that Plaintiff has neither established standing nor stated a viable cause of action against Defendant Insider, Inc. ("Business Insider"). In his First Amended Complaint ("FAC"), Plaintiff alleges that he is entitled to $5,000 in statutory damages because, when he voluntarily visited Business Insider's website (the "Site"), a line of code in the Site instructed Plaintiff to send his IP address to one of Business Insider's vendors, Audiencerate. Notably, Plaintiff does not allege that Business Insider would otherwise not have been in possession of his IP address; he had to provide it to Business Insider to visit the Site. In fact, the crux of Plaintiff's claim is not that Business Insider obtained information about him that he does not want it to have or that Business Insider shared information about him that he did not want shared. There is no dispute that Business Insider lawfully collected Plaintiff's IP address and could have lawfully provided that IP address to Audiencerate. Instead, the crux of Plaintiff's claim is that the manner in which Business Insider provided his information to Audiencerate violated California Penal Code § 638.51—California's pen register statute. But claiming that an otherwise lawful act (collection and sharing of Plaintiff's IP address) was done in an unlawful manner (via a pen register) does not give rise to an injury-in-fact. It is the exact type of procedural violation the Supreme Court has cautioned against. Further, Plaintiff has not actually alleged that Business Insider was, in fact, using a pen register. The line of code in question merely instructed Plaintiff to provide to Audiencerate the IP address Plaintiff was using at the time he visited the Site. That is not what a pen register does. A pen register allows a third party to identify the telephone numbers an individual is calling or, in this context, the IP addresses of the websites the individual is visiting. Plaintiff does not allege that the line of code

tracked what other websites he visited. Indeed, Plaintiff's allegations are limited to the transmission of his IP address when he voluntarily visited Business Insider's website. Plaintiff has failed to allege an injury-in-fact for Article III standing purpose and has failed to state a viable claim. His FAC must be dismissed.

## ARGUMENT

### I. PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT.

In response to Business Insider's argument that Plaintiff has not alleged an injury-in-fact sufficient to establish Article III standing, Plaintiff puts forth three rebuttals. First, Plaintiff claims that to establish an injury-in-fact, he need not establish the elements of an invasion-of-privacy claim but, instead, must only show that Business Insider's "conduct injured Plaintiff vis-à-vis an invasion of his privacy sufficient for Article III standing." [Dkt. No. 29, p. 3.] Second, Plaintiff claims that an alleged violation of § 638.51 is a *per se* injury-in-fact. [*Id.* at pp. 4-5.] And third, Plaintiff argues that, contrary to the overwhelming majority of authority, he does, in fact, have a reasonable expectation of privacy in his IP address. [*Id.* at pp. 5-9.] As discussed below, all three arguments are wrong. Plaintiff has not established an injury-in-fact sufficient to establish Article III standing, let alone stated a claim upon which relief can be granted. . His FAC must be dismissed.

#### A. The Use of an Alleged Pen-Register / Trap-and-Trace Device Does Not Result in an Injury-in-Fact.

This Court is not the first to decide whether a bare violation of § 638.51 constitutes an injury-in-fact for purposes of Article III standing. On August 5, 2024, Judge Wu of the United States District Court for the Central District of California in *Hughes v. Vivint, Inc. et al.*, Case No. 2:24-cv-03081-GW-KS, issued a minute order adopting his tentative ruling that held that the plaintiff, Dana Hughes, had failed to allege a concrete injury arising out of the defendant's alleged

use of a trap-and-trace device and dismissed the case for lack of Article III standing.[1] The factual allegations in *Hughes* mirror the factual allegations here:

| ***Hughes* Complaint** | **Plaintiff's Complaint** |
|---|---|
| "Defendant operates: https://www.vivint.com (the 'Website')." [*Hughes v. Vivint, Inc. et al.*, Case No. 2:24-cv-03081-GW-KS, Dkt. No. 1-1 ("*Hughes Compl.*"), ¶ 10.[2]] | "Insider, Inc. ('Defendant' or 'Insider') owns and operates the website https://www.businessinsider.com (the 'Website')." [Dkt. No. 19, ¶ 1.] |
| "Defendant has installed on its Website software created by TikTok in order to identify website visitors." [*Hughes* Compl., ¶ 10.] | "Defendant causes the Audiencerate Tracker to be installed on Website visitors' internet browsers." [Dkt. No. 19, ¶ 2.] |
| "The TikTok Software gathers device and browser information, geographic information, referral tracking, and url tracking by running code on the Website to send user details to TikTok." [*Hughes* Compl., ¶ 12.] | "Defendant…uses the Audiencerate Tracker to collect IP addresses of visitors to the Website," [Dkt. No. 19, ¶ 2], which allows Audiencerate to determine the "specific device's state, city, and zip code," [*id.* at ¶ 25.] |
| "Data captured by the TikTok Software is sent to TikTok's servers so that TikTok can reconstruct the user's identity." [*Hughes* Compl., ¶ 17.] | "The Tracker then causes the browser to send identifying information—including the user's IP address—to Audiencerate," [Dkt. No. 19, ¶ 22], and "'[c]ompanies can use an IP address … to personally identify individuals" [*id.* at ¶ 27 (alterations in original)]. |

That the plaintiff in *Hughes* alleged the use of a trap-and-trace device whereas Plaintiff here alleges the use of a pen-register is, for purposes of Article III standing, a distinction without a difference. Under CIPA, the two devices capture the same type of information—"dialing, routing, addressing, or signaling information." *Compare* Cal. Penal Code § 638.50(b) (defining pen register) with *id.* at §638.50(c) (defining trap-and-trace device). And since, "[u]nder California law, a legally recognizable privacy interest arises from the sort of information revealed," *Norman-Bloodsaw v. Lawrence Berkeley Lab'y*, 135 F.3d 1260, 1271 (9th Cir. 1998), whether Plaintiff here alleges the use of a pen register or trap-and-trace device has no impact on the Court's standing

[1] A true and correct copy of the tentative ruling in *Hughes* is attached as Exhibit A to the concurrently filed Declaration of Robyn M. Feldstein ("Feldstein Decl."). A true and correct copy of the minute order adopting the tentative ruling in *Hughes* is attached as Exhibit B to Fedlstein Decl.

[2] A true and correct copy of the complaint in *Hughes* is attached as Exhibit C to Felstein Decl.

analysis. The "sort of information" is the same, and it's collection/disclosure is not an injury-in-fact. The Court should follow the *Hughes* court's lead and dismiss Plaintiff's FAC for lack of Article III standing.

**B. <u>Non-Private Information Does Not Become Private Because It is Shared.</u>**

Plaintiff does not dispute, nor could he, that he voluntarily provided his IP address to Business Insider. Instead, Plaintiff argues, just like the plaintiff in *Hughes* argued, that, for standing purposes, what matters is not that he voluntarily provided his IP address to Business Insider but that Business Insider subsequently disclosed his voluntarily-provided IP address to a third party. [*Compare* Dkt. No. 29, p. 4 (citing *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook*") for the proposition that "[a] right to privacy encompasses the individual's control of information concerning his or his person.") *with Hughes* Order, p. 6 ("Plaintiff accurately quotes the Ninth Circuit for the proposition that 'a right to privacy encompasses the individual's control of information concerning his or her person.'".]

In making this argument, Plaintiff fails to realize that simply losing the right to control one's information is not, in and of itself, an invasion of privacy. For there to even be the *possibility* of an invasion of privacy, the information over which control is lost must be private in the first place. Plaintiff's citation to the Supreme Court's decision in *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749 (1989) ("*Freedom of Press*") makes this clear.[3]

In *Freedom of Press*, a CBS news correspondent requested from the Federal Bureau of Investigation ("FBI") "rap sheets" on four individuals. *Freedom of Press*, 489 U.S. at 757. When the FBI partially denied the request, the news correspondent brought suit, seeking to compel

[3] Plaintiff also cites to *In re Facebook*, 956 F.3d 589; *In re: Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316 (3d Cir. 2019); and *Mount v. PulsePoint, Inc.*, 684 F. App'x 32 (2d Cir. 2017). [Dkt. No. 29, p. 3.] None of these cases has anything to do with the facts at issue here, as none of them involve the subsequent disclosure of voluntarily-provided information.

disclosure on the grounds that the "rap sheets" contained "matters of public record." *Id.* The Supreme Court disagreed. First, the Supreme Court found that "individual subjects have a significant privacy interest in" the information contained in their "rap sheets," *id.* at 767, such as their "date of birth and physical characteristics, as well as a history of arrests, charges, convictions, and incarcerations," *id.* at 752. Second, the Supreme Court held that while the information included in the "rap sheet" "may have been at one time public," such publication did not, *per se*, make that information any less private. *Id.* at 764. Put another way, where the information gives rise to a privacy interest in the first instance, its post-publication disclosure may still constitute an invasion.

That is clearly not the case here. Plaintiff cannot legitimately argue that he has a privacy interest in his voluntarily-provided IP address. *See, e.g., United States v. Kidd*, 394 F. Supp. 3d 357, 362 (S.D.N.Y. 2019) ("[M]ost courts have adopted a categorical approach holding that users have no reasonable expectation of privacy in such IP address information."). He, therefore, cannot argue that Business Insider's alleged disclosure of his IP address to Audiencerate invaded his privacy. To hold otherwise would turn privacy law on its head, as it would allow two website operators to individually collect a website user's IP address while, at the same time, preclude the operators from sharing that lawfully collected information with each other. In order for Plaintiff to have suffered a concrete injury from Business Insider's alleged conduct, he must establish that he has a privacy interest in his IP address, which, as discussed above and below, he has not done and cannot due. His FAC must be dismissed.

### C. <u>A Violation of CIPA's Pen Register / Trap-and-Trace Statute Is Not a *Per Se* Injury-in-Fact.</u>

Contrary to Plaintiff's assertion, an alleged violation of California Penal Code § 638.51 is not, in and of itself, sufficient to establish injury-in-fact for Article III standing purposes. The *Hughes* decision makes that abundantly clear. So, too, do Plaintiff's own citations.

Plaintiff cites to six cases that he claims support his argument that an alleged violation of § 638.51 establishes an injury-in-fact. [Dkt. No. 29, pp. 4-5.] None does. *Jones v. Ford Motor Co.*, 85 F.4th 570 (9th Cir. 2023) and *People v. Shapiro*, 50 N.Y.2d 747 (1980) did not involve a claim under CIPA at all. *Ribas v. Clark*, 38 Cal. 3d 355 (1985), as a state court case, did not involve standing at all. And *Yockey v. Salesforce*, *Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023), *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023), and *In re Facebook,* 956 F.3d 589, while involving claims under CIPA, had nothing to do with § 638.51. Instead, they included allegations that communication "content" was collected and asserted violation of CIPA's wiretap sections, §§ 631 and 632. Those sections do, in fact, "codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing," *In re Facebook*, 956 F.3d at 598, because the harms they seek to prevent "bear a 'close relationship' to ones that have 'traditionally been regarded as providing a basis for a lawsuit,'" namely, an "'unreasonable intrusion upon the seclusion of another,' which traditionally extends to, among other things, 'tapping ... telephone wires' as well as 'opening ... private and personal mail'" (i.e., obtaining without authorization the ***contents*** of a communication), *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1117 (9th Cir. 2020). That is, "historical practice provides support not only for the conclusion that wiretapping is actionable, but also for the conclusion that a wiretapping plaintiff 'need not allege any further harm to have standing.'" *Id.* at 1117–18.

But § 638.51 is not a wiretapping statute, and Plaintiff here is not a "wiretapping plaintiff." Plaintiff is not suing Business Insider for collecting his IP address; he freely admits that he voluntarily provided his IP address to Business Insider. [Dkt. No. 19, ¶ 24 ("[T]he IP address enables a device to communicate with another device[.]").] Instead, Plaintiff is suing Business Insider for the ***manner*** in which Business Insider collected his IP address. [Dkt. No. 19, ¶ 12

("CIPA § 638.51(a) proscribes any 'person' from 'install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order.'").] A statute regulating the way in which a company, such as Business Insider, collects a website user's voluntarily-provided IP address does not bear a close relationship to any harm that has "traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016). Therefore, Plaintiff must allege some harm, above and beyond a violation of § 638.51, to establish standing. He has failed to do so. His FAC must be dismissed.

### D. <u>Plaintiff Does Not Have a Reasonable Expectation of Privacy in His IP Address.</u>

In a last-ditch effort to save his FAC, Plaintiff argues that he does, in fact, have a reasonable expectation of privacy in his IP address. [Dkt. No. 19, p. 5.] In making this argument, Plaintiff goes against decades of case law[4] and the very purpose of § 638.51. If, as Plaintiff claims, § 638.51 regulates the collection of IP addresses (it does not) and if, as Plaintiff claims, individuals have a reasonable expectation of privacy in their IP addresses (they do not), then there would be no need for § 638.51 because any law enforcement personnel seeking to use a pen register would have to obtain an actual warrant before doing so. *People v. Fick*, 107 Cal. App. 3d 892, 895 (Ct. App. 1980) ("[A] search is not unreasonable under the Fourth Amendment (and a warrant therefore not required), if there is no reasonable expectation of privacy in the object which is searched."). In fact, § 638.51 exists precisely because there ***is no expectation of privacy*** in the information collected by a pen register.[5]

---

[4] *See, e.g., United States v. Christie,* 624 F.3d 558, 574 (3d Cir. 2010) (finding "no reasonable expectation of privacy exists in an IP address….").

[5] Plaintiff makes several other arguments that can be easily dispensed. **First**, Plaintiff claims that his allegations "go far beyond the mere collection of IP addresses." [Dkt. No. 29, p. 6.] That is not true. The only information specifically identified by Plaintiff that Business Insider collects is his IP address. His other allegations go to how Business Insider *uses* his IP address, but Business Insider's post-collection use does not make Plaintiff's IP address any more private. **Second,** Plaintiff tries to distinguish the criminal cases cited by Business Insider in its Motion to Dismiss

Plaintiff has failed to meet his burden for establishing an injury-in-fact for Article III standing purposes. His FAC must be dismissed.

## II. PLAINTIFF HAS NOT ALLEGED THE USE OF A PEN REGISTER.

Plaintiff makes two arguments in response to Business Insider's argument that he has not alleged the use of a pen register. First, he claims that his case is different than those previously decided because he, unlike the plaintiffs before him, alleges that his IP address was provided to a third party. [Dkt. No. 29, pp. 8-11.] Second, he argues that the recently issued decision in *Moody v. C2 Educ. Sys. Inc.,* No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) compels this Court to deny Business Insider's Motion to Dismiss. [*Id.* at p. 13.] Neither argument holds water.

### A. Under § 638.51, How Information Is Used After It Is Collected Is Immaterial.

Two California courts have already found, based on allegations nearly identical to those made by Plaintiff here, that § 638.51 does not apply to a website operator's collection of users' IP addresses. *See Licea v. Hickory Farms LLC,* No. 23STCV26148, 2024 WL 1698147, at *4 (Cal.Super. Mar. 13, 2024); *Casillas v. Transitions Optical, Inc.*, Case No. 23STCV30742 (Cal. Super. Ct. L.A. Cnty. April 23, 2024) ("*Casillas*") (attached as Exhibit B to Feldstein Decl.).

Plaintiff tries to distinguish these cases on the grounds that the plaintiffs there did not allege that the defendant was providing their IP addresses to third parties. [Dkt. N. 29, p. 9.] That is both incorrect and immaterial. The *Casillas* plaintiff expressly alleged that "[t]he PR/TT

---

on the grounds that "Fourth amendment standing is quite different … from 'case or controversy' determinations of article III standing." [Dkt. No. 19, p. 7.] That may be true, but it does not change the fact that a reasonable expectation of privacy is a reasonable expectation of privacy, whether under criminal or civil law. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978) (noting that the Supreme Court *in Katz v. United States*, 389 U.S. 347 (1967) "held that capacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has ***a legitimate expectation of privacy*** in the invaded place." (emphasis added)).

beacon…causes the browser to send identifying information—including the user's IP address—to the PR/TT beacon's software provider, which is a software-as-a-service company that develops the PR/TT beacon provided to website owners…." [*Cassilas* Compl., ¶ 33, attached to Feldstein Decl. as Exhibit D.]

Beyond that, it makes no difference whether the IP addresses in *Licea* and *Casillas* were being shared with a third party because § 638.51 is only concerned with the installation and use of a pen register. Cal. Penal Code § 638.51(a) ("[A] person may not install or use a pen register…without first obtaining a court[.]"). As a result, the question before this Court is whether Business Insider has installed and/or used "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). And Plaintiff's allegations regarding the "device or process" used by Business Insider here mirror the allegations in *Licea* and *Casillas*. Therefore, neither *Casillas* nor *Licea* is distinguishable in a way that would have any impact on this Court's decision. The courts in *Licea* and *Casillas* found that the plaintiff had not adequately alleged the installation or use of a pen register, and this Court should do the same.

**B. The *Moody* Decision Is Inapposite.**

Although, with regard to the Court's standing analysis, the difference between a pen register and a trap-and-trace device is immaterial, the same is not true when deciding whether Plaintiff has stated a claim. The type of device allegedly used does matter.

In *Moody*, the plaintiff alleged that the defendant installed on its own website software from TikTok that captured "device and browser information, geographic information, referral tracking, and URL tracking" from website visitors and then used that information to "uncover the

visitors' identities." *Moody,* 2024 WL 3561367, at *1. Put another way, the plaintiff in *Moody* alleged that the defendant was using a "device or process that ***captures***…dialing, routing, addressing, or signaling information ***reasonably likely to identify the source*** of a wire or electronic communication." Cal. Penal Code § 638.50(c) (emphasis added).

That is not what Plaintiff alleges here. Here, Plaintiff alleges that Business Insider's website instructed Plaintiff's browser to install on itself a program that sent to Audiencerate his ***own IP address.*** [Dkt. No. 19, ¶ 22.] That is a far cry from a "device or process that records…dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." Cal. Penal Code § 638.50(b). To be clear, it would be a closer call if Plaintiff alleged that the Tracker was instructing his browser to send to Audiencerate the IP addresses of ***every*** website Plaintiff visited. In that scenario, the Tracker would be more akin to traditional pen registers, recording the numbers dialed from a phone. But, again, that is ***not*** what Plaintiff alleges. Instead, what Plaintiff alleges is that, by using the Tracker on its website, Business Insider merely required Plaintiff to provide his IP address to one of its vendors. Affirmatively sending one's own IP address to a third party is not the same as having the IP addresses of every website visited by an individual surreptitiously recorded.

Plaintiff's reliance on *Moody* is misplaced. Not only does that holding not change the fact that Plaintiff has not adequately alleged the use of a pen register here, but it also does nothing to change the fact that Plaintiff has not alleged an injury-in-fact for Article III standing purposes.

## III. CONCLUSION

For the reasons stated above, Business Insider respectfully requests that the FAC be dismissed. Plaintiff has failed to allege a concrete injury for Article III standing purposes. And, even if he had, he has failed to state a claim under § 638.50 of the California Penal Code.

Dated: August 29, 2024

Respectfully submitted,

BAKER & HOSTETLER LLP

*/s/ Robyn M. Feldstein*

Robyn M. Feldstein
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Tel: 212.589.4200
rfeldstein@bakerlaw.com

Matthew Pearson (admitted *pro hac vice*)
Baker & Hostetler LLP
600 Anton Boulevard
Suite 900
Costa Mesa, CA 92626
Tel: 714.754.6600
mpearson@bakerlaw.com

*Attorneys for Defendant*